**BLEWETT, d. b. a. CLEVELAND GLASSHEAT COMPANY, Plaintiff-Appellee, v. SULLIVAN et, Defendants-Appellants.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 24276.   Decided November 15, 1957.

Michael A. Picciano, Joseph H. Taddeo, for plaintiff-appellee.
Beach & Warner, for defendants-appellants.

## OPINION

By SKEEL, PJ.:

This appeal comes to this court on questions of law from a judgment entered for the plaintiff by the court (trial by jury having been waived), in the common pleas court of Cuyahoga County. The action is based on contract. It is the claim of the plaintiff that the parties entered into a contract on or about October 15, 1953, whereby the plaintiff agreed to install certain "blown in insulation" in defendants' new house then under construction and likewise to furnish certain electrical heating equipment for prices as alleged in plaintiff's petition. It is further alleged that the plaintiff fully performed his agreement at the request of the defendants and that the defendants have refused and failed to pay the agreed price. The judgment entered was for $2810.00 and costs.

The allegations of the petition are, in brief, that the defendants were the owners of certain real estate in Moreland Hills, Ohio, upon which they were then in the process of constructing a home; that the defendants in the month of October, 1953, entered into a verbal contract with the plaintiff to furnish and install certain described insulation at fourteen cents a square foot on the sided walls and twelve cents a square foot for the ceiling coverage and to furnish electric heating equipment as described in the petition. By answer, the defendants put in issue all of the material allegations of the petition. There was a second cause of action set forth in the plaintiff's petition seeking to foreclose a mechanic's lien attempted to be asserted against defendants' property. This cause of action was dismissed upon pre-trial so that we are here concerned only with the issues presented on the first cause of action.

The defendants set forth the following claims of error:

"1. The judgment is contrary to law and against the weight of the evidence.

"2. The court erred in excluding evidence offered by these defendants tending to prove failure of performance by defendant. (sic)

"3. The court erred in taking judicial notice of improper matter.

"4. The court erred in refusing to grant defendants' motion for judgment on the pleadings and the evidence."

The evidence, while in direct conflict as to whether or not the defendants contracted with the plaintiff for the materials and services as alleged in his petition, does establish beyond doubt that the defendants were contemplating constructing a home early in the year of 1953 and that in February of that year, they contacted the plaintiff concerning the possibility of using electric "glass heat" as the means and method of heating such house; that the plaintiff did call on defendants a number of times, offering suggestions on insulation and using "glass heat" and quoting prices for his products and services; that the defendants did construct such home, the work beginning about June 1st, 1953; that there was installed in defendants' house electrical "glass heat" furnished by the plaintiff and that the plaintiff also installed "blown in" fiber glass insulation. The defendants, in denying personal responsibility to the plaintiff by general denial, contended by their testimony that they employed a general contractor to build their house and that what the plaintiff did was as a result of an agreement with the general contractor and not as a result of a direct promise on their part to the plaintiff.

The third claim of error has to do with the court's statement that it is authorized to take judicial notice of the way home insulation is measured for the purpose of fixing the price. The plaintiff had testified that his charge for "blown in" insulation was measured by the number of square feet of outside wall and ceiling surfaces in the house while the defendants, by cross-examination, had attempted to demonstrate that the quantity of a bulk item could not be measured in square feet. Objections to questions seeking to establish such fact were sustained by the court, the court saying:

"I know, but the court will even take judicial notice of the fact that these matters are dealt with in square feet. While they may be handled in other ways, but always, I think, these kind of things are in square feet. But you can divide the square feet by 9 and it will give you the square yards."

Such a statement has no foundation in law or fact and was clearly erroneous to the prejudice of the defendants. While the side wall insulation, to be blown in as is shown by the evidence, was to fill up a space of two inches between the outside masonry wall and the plaster board, the plaster board being nailed to two inch furring strips whereby the quantity of the material used could be reasonably estimated after deducting window openings and the like, there is no means of establishing the quantity of insulation "blown" over the ceiling. It could have been a half inch thick or a foot thick, depending on the will of the plaintiff. Certainly no statement by him, to be found in the record, gave the slightest notion of what thickness of blown in insulation would be sufficient over the ceiling to meet or fulfill his claimed obligation to properly insulate the house. In all events, this assignment of error is sustained. A court cannot take judicial notice of the manner by which products of this type are sold.

The fourth assignment of error must be overruled. The state of the record at the conclusion of taking testimony was not such as would justify the granting of such a motion for the reasons advanced by the defendants. The motion was based on the provisions of §1311.04 R. C., dealing with the creation of a mechanic's lien. The provisions of the mechanic's liens law were not intended to and do not affect the enforcement of direct contractual obligations.

The second claim of error is based on the rejection of evidence offered by the defendants to show nonperformance, in part, of the plaintiff's claim for materials and services in insulating defendants' house. The defendants offered to show that instead of 4520 square feet of ceiling and side walls, there was, in fact, only a total of 3438 square feet of such surfaces that could be insulated. This evidence was rejected by the court on the ground that the defendants denied that they had entered into a contract with the plaintiff and that questions of nonperformance of the denied contract could not be presented under the circumstances. In this the court committed error prejudicial to the rights of the defendants. The record on this question is as follows:

"Q. Mr. Sullivan, have you examined the insulation of your house insofar as you can, it being closed up, and as well as being completed?

"A. I have.

"Q. Will you tell us how you examined this - -

"MR. PICCIANO: I object; there is a general denial here, your Honor.

"THE COURT: Yes, I think that is true.

"MR. McKIM: Your Honor, I am not attempting to show that the insulation is not insulation; I am attempting to show - -

"THE COURT: I know, but your defense is that you have no contract.

"MR. PICCIANO: That is right.

"THE COURT: That is your defense.

"If you have no contract it makes no difference here whether it is good, bad or indifferent.

"MR. KIM: But, your Honor, the contract called for in the petition specifies exactly what was to be done.

"THE COURT: I know, but you say you have no contract." Thereafter the defendants proffered the evidence rejected. A defendant by a general denial puts in issue every material allegation of the plaintiff's claim. The fact that by his opening statement and proffered evidence a defendant contends that there was no agreement between the parties does not deprive him of the right to introduce evidence to show that if, in fact, such contract is established, the plaintiff either failed to perform in whole or in part or that the damages claimed are in excess of what the plaintiff is, in fact, entitled to receive. The defendants were entitled to introduce the evidence proffered.

The record also shows that the court refused to receive in evidence the specifications found in the loan file of the Society for Savings Bank where the mortgage loan to finance the building of the house was obtained prior to the time construction was commenced. These specifications, together with the "contract" between the builder (Matthews) and

defendants and the builder's "cost estimate," were tendered from the files of the bank. The fact that these papers were a part of the loan file is not questioned. They were a part of the permanent records of the bank in this loan transaction.

When considered in the light of the testimony of the plaintiff, hereafter to be noted, there is no question but that the defendants were entitled, for the purpose of testing the plaintiff's credibility, to identify and have received into evidence the building specifications.

The first assignment of error presents the question of whether or not the judgment is against the manifest weight of the evidence.

The defendant, Gulbert G. Sullivan, was called for cross-examination by the plaintiff and testified that in early 1953, he contemplated building a home in Moreland Hills and because gas was not available, decided to investigate advertisements he had observed with respect to electric glass heat and for that purpose called at plaintiff's place of business on Neff Road in Cleveland and explained his situation. After a demonstration by the plaintiff, the plaintiff later sent one of his salesmen to defendants' residence to further press the advantages of electric glass heat. The defendants then deliverd to him a set of plans to estimate the job. The estimates were, in the judgment of the defendants, too expensive and plaintiff's salesman was so advised. The plaintiff was also advised that defendants' general contractor had a bid for the use of oil heat which was cheaper. This witness further testified that the plaintiff thereafter, by personal calls, continued to press the use of electric glass heat. A written sales contract was submitted which he requested defendants to sign which request was refused with the statement that defendants "had a general contractor—that he would have to sign any papers." The witness also testified that he was told of the necessity of blown in insulation for the successful use of "electric glass heat," and that while some prices were submitted, he did not order for his own account either the insulation or the glass heat equipment.

The plaintiff testified about his calls on the defendants to interest them in using "glass heat" in their proposed home. He examined the blueprints and prepared a contract for them to sign. The proposal was too high and a second proposal in writing, using "electromode units" instead of glass panels, was submitted "which was considerably lower than our original proposal." The plaintiff then testified that there were several meetings between the parties but at these meetings "Mr. Sullivan didn't accept or didn't sign any contract." He further testified, after explaining the items of cost in the first proposal calling for 20 glass panels, 10 master relays, 9 thermostats, a terminal control cabinet, circuit brakers, relays, the installation of "complete wire for a total price of $2022.50" less a "builder's discount" of $172.50, that "Mr. Sullivan said he had not decided to go ahead with the job." This witness also testified that the defendants told him that Mr. Matthews (the general contractor) was not favorable to electric heat and he (Blewett) requested the privilege of meeting the contractor on the job and that such a meeting was had in July when the job was half finished. Conversation about insulation was thereafter testified to by this witness (said to be

in June or July) when the Sullivans were told that blown in type insulation was the finest insulation for electric heat wherein the defendant (Mr. Sullivan) said: "Well, if that is the insulation we have got to have," he said, "we have no alternative; go ahead and figure on that type of insulation." This is the last conversation the plaintiff claims to have had with the defendants until October 15, 1953, when it is claimed a contract was concluded with the defendants for both insulation and electric heating by the defendant (Mr. Sullivan) calling the plaintiff and advising him that he should proceed with the insulation. The defendant's (Mr. Sullivan) version of this telephone call, is that he, at the request of the contractor (who claimed he could not reach the plaintiff and the plaintiff's failure to install the insulation was holding up the job) called plaintiff to tell him the contractor wanted him to proceed with the work of installing the insulation. It is not claimed that anything was said at this time about "glass heat" but this call is pleaded as defendants' acceptance of plaintiff's offer on this subject.

It should be noticed that the electric heating equipment alleged to have been sold, as set forth in plaintiff's petition, is not in complete accord with the estimate which plaintiff produced and introduced into evidence. Twenty glass panels at $67.50 is the proposal found in the estimate, while nineteen such panels at $69.50 are pleaded. No mention in the petition is made of "builder's discount" or "installation costs."

The plaintiff denied in his testimony ever dealing directly with the defendants' general contractor, yet the contract price for the building of defendants' house included both the installation of insulation and heating equipment. This fact is supported by plaintiff's evidence admitting he was told that hot water heating units installed around the baseboard, heated by oil, was first contemplated. This was the competition plaintiff had to face in trying to sell electric glass heat and the subject of insulation, other than that designated, was given consideration. The record disclosed that the defendants informed the plaintiff that if any agreement was reached, for him to supply "electric glass heat," the general contractor would have to sign the contract and in the written proposal furnished by the plaintiff, a builder's discount of $172.50 was set out. The plaintiff testified that his method of doing business was upon written order designating the services and equipment to be furnished. This action is pleaded as based on an oral agreement.

The plaintiff testified that defendants had not decided on glass heat in June or July, yet the specifications filed with the Society for Savings before any work was commenced on the house, provided on page 5, (i):

"Heating - -

"Shall be electric panel radiant heat and installed in accordance with the recommendations of the heating contractor."

The specifications in paragraph (e) Carpentry—sub-paragraph 13 - -

"Wallfurring—All concrete block walls shall be furred with 2 x 2's for installation of rock lath."

Sub-paragraph 14—"Insulation—Entire side wall and ceiling area are to be insulated with Johns Manville long fiber paper—felt rockwood blanket insulation installed so as to provide proper air space on each

side of the insulating material. In addition to the exterior walls, all partitions surrounding the bathroom are to receive insulation."

The plaintiff testified that when he saw the plans (once or twice referred to by him as "specifications"), the insulation called for was balsam wool. He also told the defendants by his testimony that the outside wallfurring should be two by two strips. He had undoubtedly examined the plans before making this statement, indicating a change in furring strips, as then indicated by the plans, was necessary.

It should also be noticed that the books of the plaintiff, recording his transactions with the construction of defendants' house, were not produced. Instead of producing the best evidence as to the state of his account with the Sullivan house, the plaintiff refreshed his recollection by a statement mailed to defendants three and one-half months after the insulation was installed and about two months after delivering the heating equipment to the job. In most business transactions, invoices almost immediately follow the rendering of a service or delivery of material and are followed by monthly billings. There is no mention in the record whether the general contractor, whom the plaintiff knew as such at the very beginning of his negotiations (who shortly thereafter went into bankruptcy), was billed in the regular course of business.

For the foregoing reasons, we must conclude that the judgment is against the manifest weight of the evidence, thus sustaining the first claim of error.

The judgment is, therefore, reversed for the foregoing reasons and the cause remanded for further proceedings.

HURD, J, KOVACHY, J, concur.