JARIC, INC., Appellee,

v.

CHAKROFF et al., Appellants; State Savings et al.

[Cite as *Jaric, Inc. v. Chakroff* (1989), 63 Ohio App.3d 506.]

Court of Appeals of Ohio,
Franklin County.

No. 88AP–1028.

Decided July 6, 1989.

*James R. Havens* and *David A. Skrobot,* for appellee.

*Steve J. Edwards* and *John H. Lewis,* for appellants Richard O. Chakroff, Barbara M. Chakroff and Aetna Casualty and Surety Co.

McCormac, Presiding Judge.

Jaric, Inc., plaintiff-appellee, commenced an action against Richard O. Chakroff et al., defendants-appellants, alleging breach of contract and foreclosure of a mechanic's lien in regard to appellee's partial installation of the heating, ventilating and air conditioning in an office building owned by Richard and Barbara M. Chakroff. Appellants filed an answer and counterclaim asserting various defenses and alleging breach of contract and fraud on behalf of appellee.

The case was tried to a jury who returned a verdict for appellee in the amount of $52,281. Appellants' counterclaim was dismissed.

Richard O. and Barbara M. Chakroff appeal asserting the following assignments of error:

"1. The Court erred in failing to dismiss all of Appellee's claims because of Appellee's failure to allege and prove a valid mechanic's lien.

"2. The Court erred in not requiring Appellee to fully answer Appellants' Interrogatories and Requests to Produce which were intended to discover Appellee's costs and profits.

"3. The Court erred in preventing Appellants during cross-examination form eliciting what were Appellee's costs.

"4. The Court erred in excluding Exhibit D from evidence.

"5. The Court erred in not sustaining Appellants' Motion for a Directed Verdict because Appellee failed to sustain its burden of proof on damages.

"6. The Court erred in refusing to hold Appellee in contempt of court for its failure to comply with the Court order to dismiss certain Defendants.

"7. The Court erred in finding that Appellee could take the deposition of its expert Thomas Eugene Kramer without complying with Civil Rule 27(B), after Appellants had filed a Notice of Appeal.

"8. The Court erred in allowing the deposition of Thomas Eugene Kramer to be admitted into evidence because Appellee failed to prove compliance with Civil Rule 32(A)(3).

"9. The Court erred by allowing the opinion of Appellee's expert to be admitted into evidence.

"10. The Court erred in allowing Appellee to elicit testimony that its invoicing procedure met the community standards.

"11. The Court erred by excluding evidence of Appellants' damages incurred as a result of Appellee's breach of contract.

"12. The Court erred in refusing to give Appellants' requested jury instruction that made Appellee's duty to provide data substantiating its right to payment a condition precedent to Appellants' duty to pay."

The evidence discloses that Richard O. and Barbara M. Chakroff own land on High Street in Worthington. In 1983, the Chakroffs decided to build an office building on the land and commenced securing bids for the work.

Jaric, Inc. is a mechanical contractor who does heating, ventilating, and air conditioning ("HVAC") work for commercial, industrial, and institutional projects. In November 1984, Jaric submitted a two-part bid for the HVAC work to be done on the construction project. The part of the bid at issue herein is the base work for the building system.

In mid-December 1984, appellants authorized Jaric in writing to begin HVAC work on the construction project. The commencement of work was based upon the acceptance of Jaric's bid and Jaric did commence work without entering into a written contract, although in January appellants gave appellee an American Institute of Architects ("AIA") form contract entitled "general conditions of the contract for construction." Appellee ultimately signed and returned the contract. It was undisputed that appellants never signed the contract.

The main divergence of testimony concerns the manner in which Jaric completed its work, the amount of work that Jaric completed before Jaric was either ordered off the job or voluntarily left the job, and the value of the performance of Jaric.

Jaric submitted its first invoice to appellants on January 25, 1985 in the amount of $24,000. Appellants were not satisfied with the details of the first invoice and Jaric expanded this invoice by breaking it into sub-categories by floor. Jaric submitted its second invoice to appellants on February 22, 1985 in the amount of $118,746. At that time, Jaric had not been paid for its first invoice.

Upon receipt of Jaric's second invoice, appellants asked appellee to submit a supplemental bill listing the material costs and documentation. James Lantz, President of Jaric, suggested a walk-through of the contract site to enable appellants to determine if the work billed had actually been done, but appellants refused. Parenthetically, appellants were operating strictly through defendant Richard O. Chakroff. Chakroff admitted that he had not submitted the dispute to the architect as required by a provision in the AIA form contract, if that contract were applicable.

According to Lantz, Chakroff verbally fired Jaric and ordered Jaric removed from the job before it had an opportunity to supply the requested supplemen-

tal documentation. Jaric received a written formal notice of dismissal on February 27, 1985, after allegedly having been verbally fired on February 22. Lantz further testified that when he asked Chakroff if they had a contract after Chakroff told Jaric to leave the job, Chakroff denied that the contract existed saying that he had not signed it. Chakroff contends that the documentation which he requested was completely reasonable and that Jaric walked off without justification rather than being fired for failure to provide the documentation. Lantz testified that the billing procedure of Jaric was within the ordinary practice of the industry, that he requested a walk-through of the job with the architect and/or Chakroff, and that Jaric had completed seventy percent of the work at the time it was ordered off the job in breach of the contract. Chakroff insisted that only a small percentage of the work had been completed and offered testimony that only ten or twenty percent of the work was completed when Jaric left the premises.

Several months after Jaric left the job, appellants engaged other persons to complete the HVAC work. Appellants submitted proof of the cost of that work.

Further facts will be discussed in relation to the assignments of error.

In their first assignment of error, appellants assert that a valid mechanic's lien is a prerequisite to bringing a suit on the underlying contract. To support this contention, appellants cite the following language from R.C. 1311.04 which sets forth procedural requirements which must be met before a contractor has a right of action or lien against the owner. The cited language reads as follows:

"Until the statements are made and furnished in the manner and form provided for in this section, the contractor has no right of action or lien against the owner, part owner, or lessee, on account of the contract, and the subcontractor has no right of action or lien against the owner, part owner, lessee, or contractor, until he has furnished the statements * * *."

The same argument was raised in *Ohio Clearwater Pools, Inc. v. Sullivan* (Dec. 30, 1988), Franklin App. No. 88AP–506, unreported, 1988 WL 142051. In rejecting the argument, we pointed to additional language in R.C. 1311.04, which is as follows:

" * * * When the appropriate period within which any liens can be filed has expired, and no liens on account of the improvement exist, then the failure of the contractor to furnish the affidavit as provided in this section shall not act as a bar or defense in any suit or cause of action to collect any claim. * * * "

We reasoned that the effect of this language along with that of R.C. 1311.11(B) (which provides that if a lien is void by reason of failure to

commence suit within sixty days after service of the notice to commence suit, the claim upon which the lien was founded is not prejudiced beyond the fact that the lien is no longer security for the claim) demonstrates that the general lien statutes do not affect the enforcement of a direct contract between the parties. See *Janell, Inc. v. Woods* (1980), 70 Ohio App.2d 216, 24 O.O.3d 266, 435 N.E.2d 1138; *Blewett v. Sullivan* (1957), 104 Ohio App. 486, 5 O.O.2d 228, 145 N.E.2d 839.

This analysis of the general lien statutes is logically consistent with the purpose of the statutes. The statutes were not designed to reduce a person's contractual rights which would be the result if this court accepted appellants' argument. Failure to allege and prove a valid mechanic's lien does not bar a cause of action between the direct parties to the underlying contract.

Appellants' first assignment of error is overruled.

■ The primary contention of appellants' second assignment of error is that the trial court should have required Jaric to provide more definitive responses to certain interrogatories concerning its costs and profits incurred while working on the project herein. At a November hearing, which included appellants' motion for the court to sanction Jaric for its failure to comply with discovery, appellants argued that the fact that Jaric supplied a three-inch pile of documents in chronological order in response to numerous interrogatories requesting production of documents supporting answers to various interrogatories was unresponsive and improper. Appellants wanted Jaric to identify which documents responded to which specific interrogatory requesting production of supporting documents. The trial court overruled appellants' motion for sanctions based upon its finding that the information tendered was in substantial compliance with the rules of discovery.

Trial courts have discretion in enforcing discovery rules. *State, ex rel. Daggett, v. Gessaman* (1973), 34 Ohio St.2d 55, 57, 63 O.O.2d 88, 90, 295 N.E.2d 659, 661. Absent an abuse of discretion which prejudicially affects a substantial right of the moving party, an appellate court will not reverse a trial court's ruling on a discovery matter. *Id.* at 58, 63 O.O.2d at 90, 295 N.E.2d at 661.

After reviewing the interrogatories which requested the production of documents and a transcript of the November hearing in which the trial court heard arguments on the matter, we find that the trial court did not abuse its discretion. Reference to the interrogatories and the information which they sought indicates that one document may serve to answer more than one distinct interrogatory. Appellants sought documents which included invoices and other types of receipts. It appears that the burden of examining the documents to answer individual questions would be substantially the same for

appellants as for appellee. Civ.R. 33(C) provides in that instance that the answering party has the option to produce the records or documents to afford the party serving the interrogatories reasonable opportunity to examine, audit, or inspect the records and to make copies thereof or compilations, abstracts or summaries therefrom rather than incur the expense of completing the work themselves. Another factor in the exercise of the trial court's discretion was the fact that the case had been pending since December 1985 and had yet to proceed to trial. The trial court was concerned that, if it required appellants to identify which specific interrogatories each document answered, the trial would be further delayed in a case that had already been pending for too long.

Appellants' second assignment of error is overruled.

Appellants thirdly assert that the trial court committed prejudicial error when it did not permit cross-examination of Richard Lantz, appellee's president and primary witness, concerning the costs which appellee had actually paid out in relation to its work on the project. The trial court's ruling was that the amount that Jaric had actually paid for materials or supplies was not relevant since Jaric remained liable for materials and supplies for subcontractor costs which Jaric had incurred in relation to the work performed on the job.

Lantz testified that appellants' breach of the contract after the work was seventy percent completed resulted in damages amounting to seventy percent of the original contract price of $171,183, which is $118,746. Appellants assert, however, that appellants had directly paid for some of the costs of material or work done while appellee was on the job and that they were prejudiced since the jury was allowed to consider a higher damage figure than was proper. Appellants primarily point to payment for material supplied by Carrier and subcontract work supplied by Winchester Mechanical in regard to this argument.

The trial court erroneously sustained objections to questions posed to Lantz on cross-examination which may have revealed that appellants had paid bills to subcontractors which appeared on the February 22 invoice. While the trial court was correct in noting that appellee could recover damages for work done which had not been paid for as yet, there were accounts with Carrier and Winchester Mechanical that appellants claim to have paid for appellee. The error was only partly corrected later. Lantz agreed that appellants had paid Carrier $30,715 which should be subtracted from appellee's total damage figure leaving a balance of $88,031. On recross-examination of Lantz, the trial court permitted appellants to ask if Jaric's calculated $88,031 damage figure included any amount that Jaric owed to its subcontractor Winchester

Mechanical. Lantz admitted that work done by Winchester Mechanical was included in the February 22 invoice. It was, however, important to ascertain whether appellee was responsible or had paid any of Winchester's bill.

Appellants were permitted to testify as to the amounts it had paid subcontractors whose work appeared on appellee's February 22 invoice, particularly Winchester Mechanical and Carrier. One of the problems with the work of Winchester Mechanical, was the fact that Winchester Mechanical performed work done for Jaric before it left the job in February 1985 and Winchester Mechanical was also engaged by appellants three months later to complete its part of the job. Appellants testified that they paid Winchester Mechanical $78,000 for their complete release, which payment included work completed while engaged by Jaric and also work completed when engaged by appellants to finish the work.

In summary, the trial court prejudicially erred in prohibiting appellants from inquiring into whether certain labor and supplies used by appellee in completing the part of the work which it completed had been paid for or incurred as an obligation. This evidence is relevant for the determination of whether appellee seeks damages for amounts paid by appellants. It is also relevant toward the issue of what percentage of the work appellee completed.

Appellants' third assignment of error is sustained.

■ In their fourth assignment of error, appellants assert that the trial court improperly excluded proposed appellants' exhibit D which was a statement by appellee's major subcontractor Winchester Mechanical (which, as previously explained, also entered into a contract with appellants to complete the work) that Winchester Mechanical did not have any outstanding monies due them from Jaric regarding the project in question. The trial court excluded the exhibit because it constituted hearsay which did not fall within any of the exceptions to the hearsay rule. The question of whether Winchester Mechanical had outstanding money due to it from Jaric does not assist in the resolution of the case since Winchester Mechanical may have also been paid monies by Jaric and, by appellants' testimony, was paid monies both for work completed prior to Jaric's leaving the job and for completion of the project. An exhibit shows that, on April 23, 1985, Winchester Mechanical entered into a contract with appellants to complete the project at a price of $28,950 which was stated to consist of $21,750 to complete the project and $7,200 to correct work done by Winchester Mechanical while under contract with Jaric. Winchester Mechanical had filed a mechanic's lien against the project in the sum of $50,500. According to another exhibit, on April 23, 1985, appellants paid $38,250 for a complete release of the mechanic's lien. Whether Winchester Mechanical was paid anything by Jaric is unknown and would

help resolve the problem.  Richard Chakroff testified at trial that he had paid Winchester Mechanical $78,000;  however, the jury may have concluded without sufficient basis that the actual payment to Winchester Mechanical for work done while Winchester Mechanical was under contract with Jaric was $38,250.

The amount of Winchester Mechanical's mechanic's lien and the costs to appellants to complete the project indicate that Jaric's testimony that seventy percent of the work was done was more likely than the testimony by an employee of Winchester Mechanical that the job was only ten to twenty percent completed in light of the fact that somewhere from $38,250 to $50,500 was expended by Winchester Mechanical prior to Jaric's leaving the project and only $28,950 was expended thereafter, of which $7,200 was for correction of work done by Winchester Mechanical.  The latter expense may have been the obligation of Winchester Mechanical rather than Jaric.

In any event, the trial court did not err in excluding the introduction of exhibit D into evidence since it was inadmissible hearsay.

Appellants' fourth assignment of error is overruled.

In their fifth assignment of error, appellants contend that appellee failed to prove damages and that the trial court should have granted their motion for a directed verdict.  The court will direct a verdict only if, after construing all the evidence relating to an essential issue most favorably to the nonmoving party, reasonable minds could reach only a conclusion against the nonmoving party.  *O'Day v. Webb* (1972), 29 Ohio St.2d 215, 220, 58 O.O.2d 424, 426, 280 N.E.2d 896, 899.  To support their argument that appellee failed to meet the burden of proof for establishing damages, appellants cite *Kinetico, Inc. v. Independent Ohio Nail Co.* (1984), 19 Ohio App.3d 26, 19 OBR 92, 482 N.E.2d 1345.  In *Kinetico,* the appellant argued that the trial court committed prejudicial error in admitting testimony of lost profits because the testimony was unsupported by a foundation, patently unreliable and an inadequate proof of damages as a matter of law.  *Id.* at 28, 19 OBR at 93, 482 N.E.2d at 1348.  The appellate court noted that a party cannot recover damages unless the amount has been established with a reasonable certainty. *Id.* at 30, 19 OBR at 95, 482 N.E.2d at 1350.  The court then turned its analysis specifically to proving lost profits with a reasonable certainty.  The court stated that in order to meet the burden of proving lost profits, a party must supply calculations based on facts available or in evidence to substantiate the lost profits figure.

The court in *Kinetico* also had to rule on the issue of whether the trial court had erred in permitting a witness for the plaintiff to estimate incidental damages (increased office expenses).  The court sustained appellants' assign-

ment of error on this matter stating that it found no testimony indicating how the estimated figure had been computed. *Id.* at 32, 19 OBR at 98, 482 N.E.2d at 1351. The court held that "[w]here an employee of a company simply testifies that the damages amount to a certain sum, without explaining the breakdown of individual items, that testimony is nothing more than a conclusion. * * *" *Id.*

In this case, Lantz predicated his damage calculations strictly on the gross contract price multiplied by the percentage of work which he testified that Jaric had completed subtracting therefrom any amounts that appellants had paid for performance of the contract. The contract amount was $171,183. Appellee acknowledged that appellants had paid for supplies furnished by the Carrier Corporation in the amount of $30,715, leaving an amount of $140,468. Lantz, testifying as an expert, stated that seventy percent of the work had been completed. He sought seventy percent of the amount due when Jaric was ordered off the job. By multiplying $140,468 by seventy percent, Lantz arrived at a damage figure of $88,031, leaving the cost of completing the project at $52,437. Lantz testified that Jaric had been paid nothing toward the project and the trial court ruled that whether Jaric had paid its suppliers or laborers was not relevant. As previously stated, the trial court allowed appellants to testify to amounts that they had paid for work performed by Jaric's suppliers or subcontractors. However, the full picture may not have been presented to the jury in light of the restrictions about cross-examination of appellee in regard to payments or obligations to Carrier and Winchester Mechanical.

However, if Jaric had been removed from the job without justification after having completed seventy percent of the work in an acceptable fashion, a reasonable measure of damages was to require appellants to pay seventy percent of the contract price to Jaric minus any sums that appellants had paid to materialmen or subcontractors in relation to work performed for Jaric.

It is important to note that Jaric did not seek any profits for the remaining thirty percent of the work. With proper proof Jaric could have established additional profits by showing that the remaining thirty percent of the work would cost less then the $52,437 allocated for the completion, the remaining part of which would be lost profit. Since no lost profits were sought for the uncompleted work, it was proper to prove the amount of damages to a reasonable certainty by allocating seventy percent of the contract price to the work completed, it being immaterial whether those amounts were allocated to labor, materials, profit or whatever.

Appellants' fifth assignment of error is overruled.

■ In their sixth assignment of error, appellants assert that the trial court erred when it refused to hold appellee in contempt of court for failing to comply with the court order to dismiss certain defendants from its complaint. R.C. 2705.02 provides the discretionary authority to a court to hold a party in contempt. Courts have the power to find parties in contempt in order to permit them to promote the orderly and efficient exercise of justice. *Zakany v. Zakany* (1984), 9 Ohio St.3d 192, 194, 9 OBR 505, 459 N.E.2d 870. In its original complaint, appellee had included tenants in the newly constructed office building as defendants. The trial court had ruled that these parties should be dismissed. In its amended complaint, appellee had deleted allegations against the tenants from the body of the complaint, but had left their names in the caption. At the hearing on appellants' motion for appellee to be found in contempt of court, the trial court observed that the tenants, while still named in the caption, were effectively out of the case. The trial court's decision not to find appellee in contempt was within its discretionary power.

Appellants' sixth assignment of error is overruled.

■ In their seventh assignment of error, appellants assert that the trial court erred when it ruled that Civ.R. 27(D) did not apply to the deposition which appellee took of its expert witness. Civ.R. 27(D) sets forth the procedure that a party must follow if it wishes to depose a person to perpetuate testimony. Appellee took the deposition of its expert witness after appellants had appealed the trial court's denial of their motion that appellee be found in contempt of court. Civ.R. 27(D) was not intended to apply to the situation herein, even though the case was on appeal. The appeal concerned a matter tangential to the cause of action, and, in fact, it was a nullity since we dismissed it on the basis that there was not a final appealable order.

Appellants' seventh assignment of error is overruled.

■ In their eighth assignment of error, appellants assert that the trial court improperly allowed the deposition of Eugene Kramer to be admitted into evidence at trial. Appellants' argument is premised upon the fact that appellee had not proven compliance with Civ.R. 32(A)(3). Because of the preference to have witnesses testify at trial, depositions may only be used in the place of live testimony if the party seeking to admit a deposition into evidence complies with a provision of Civ.R. 32(A). Originally, appellee had received permission to introduce the deposition of its expert into trial because the witness would not be in town on the date of the original trial. Later, the trial date was changed. At trial, the judge allowed the deposition to be introduced into evidence over the objection of appellants. Appellants' counsel had opted not to attend the deposition of the expert witness because of their belief that the trial would not take place at the originally scheduled date and

that the grounds for admitting the deposition would, therefore, be inapplicable.

While this belief would not have protected appellants from having waived the opportunity of cross-examination had the deposition been admissible, it does not result in a waiver of appellants' right to challenge the admissibility of the deposition in lieu of live testimony by the witness. Civ.R. 32(A)(3) provides as follows:

"The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: (a) that the witness is dead; or (b) that the witness is beyond the subpoena power of the court in which the action is pending or resides outside of the county in which the action is pending unless it appears that the absence of the witness was procured by the party offering the deposition; or (c) that the witness is unable to attend or testify because of age, sickness, infirmity, or imprisonment; or (d) that the party offering the deposition has been unable to procure the attendance of the witness by subpoena; or (e) that the witness is an attending physician or medical expert, although residing within the county in which the action is heard; or (f) that the oral examination of a witness is not required; or (g) upon application and notice, that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used."

None of the provisions of Civ.R. 32(A)(3) was shown to be applicable. The fact that the witness was unavailable at a prior scheduled trial date and that the deposition could have been introduced in lieu of the witness' live testimony at that time had the trial occurred then, does not affect the use of the deposition at the later held trial. Apparently, the witness was available and could have been called to testify in person. There was no basis established for the trial court to permit introduction of the video testimony.

▪ The testimony of this witness was important. The expert witness testified that he inspected the building in April 1985 when work had been stopped and that appellee's work was such that there was no reason to ask it to leave. There was no cross-examination as there could have been had the witness testified in person. There was an important and disputed issue about the quality of appellee's work. Thus, admission of the video deposition was prejudicial.

Appellants' eighth assignment of error is sustained.

▪ In their ninth assignment of error, appellants assert that the trial court erred when it allowed the expert to testify as to his opinion of the

quality of the work without determining how certain the expert was of his opinion. In other words, appellants contend that the expert's opinion was inadmissible because it failed to established that it was given with a reasonable degree of scientific certainty. The case which appellants cite in support of their argument is not applicable to the disputed testimony in this case. Appellants cite *Shumaker v. Oliver B. Cannon & Sons, Inc.* (1986), 28 Ohio St.3d 367, 28 OBR 429, 504 N.E.2d 44. The issue in *Shumaker* was whether the trial court had erred when it admitted expert testimony concerning the mere possibility of a causal connection in a personal injury action. *Id.* at 369, 28 OBR at 430, 504 N.E.2d at 46. Specifically, the doctor responded to the hypothetical question of whether or not the plaintiff's cancer could have been caused by fumes to which he had been exposed at work. The court noted that when establishing proximate cause through expert testimony, the expert's opinion as to what was the proximate cause must be stated at a level of probability, not mere possibility. *Id.* at 369, 28 OBR at 430, 504 N.E.2d at 46.

In the present case, the expert was not being asked to respond to a hypothetical question concerning proximate cause. Rather, he was asked to testify as to the quality of appellee's work based upon his inspection of the construction site. The expert witness clearly stated his opinion that the quality of work was acceptable. Inferentially, this opinion is based upon the expert's application of his knowledge and experience to the inspection of the work. There is no mandatory technical requirement to state the obvious. The appropriate means of weakening the credibility of such testimony is cross-examination.

Appellants' ninth assignment error is overruled.

In their tenth assignment of error, appellants assert that the trial court committed prejudicial error when it permitted Lantz to testify that the billing procedure which he used with appellants was the same as was customarily used in the community. Appellants argued that the parties had a written contract, the AIA contract which appellee had signed and returned to appellants on February 19, 1985. Provision (9.3.1) of this contract sets forth the terms of payment:

"At least fifteen days before the date for each progress payment established in the Owner–Contractor Agreement, the Contractor shall submit to the Construction Manager an itemized Application for Payment, notarized if required, supported by such data substantiating the Contractor's right to payment as the Owner, the Architect or the Construction Manager may require, and reflecting retainage, if any, as provided elsewhere in the Contract Documents. * * * "

Appellants base their argument on the premise that the AIA document was part of the contract between them. However, a genuine issue existed as to whether the AIA document actually was part of the contract between the parties. Lantz had testified that when Richard Chakroff told appellee to leave the job, Lantz asked if they had a contract and Chakroff replied "[n]o, we don't. I didn't sign it." Also, appellants were not given the AIA document by appellee until approximately one month after appellee had begun work on the project under the informal contract consisting of appellee's bid and appellants' letter of authorization. Even appellants admit that they never signed the contract, giving as a reason that appellee walked off the job first. Appellants also admitted that there were clauses in the AIA contract that they did not follow, giving further credence to a finding that it was not part of the contract between the parties.

Appellants' tenth assignment of error is overruled.

In their eleventh assignment of error, appellants assert that the trial court erred when it excluded evidence of damages which appellant incurred due to appellee's alleged breach of contract. Specifically, the court sustained objections to appellants' evidence on the matters of rent loss, office overhead relating to the breach, and lien costs. In a breach of contract case, a damage award may include costs and lost profits. The Ohio Supreme Court has held that the general rule for lost profits in a breach of contract case is that lost profits may be recovered if the parties contemplated profits when they entered into the contract, the loss of profits is the probable result of the contract breach, and the profits are not remote or speculative and may be shown with reasonable certainty. Evidence of lost profits as an item of compensatory damages need only be reasonable, not specific. *Charles R. Combs Trucking, Inc. v. International Harvester Co.* (1984), 12 Ohio St.3d 241, 244, 12 OBR 322, 325, 466 N.E.2d 883, 887. This court has allowed recovery of indirect fixed overhead costs when established by competent and accurate evidence. *Columbus & Southern Ohio Elec. Co. v. J.P. Sand & Gravel Co.* (1985), 22 Ohio App.3d 98, 100, 22 OBR 286, 288, 489 N.E.2d 830, 831. Lost rent constitutes part of profits lost due to breach of contract. The trial court should have allowed testimony on these matters and then decided if the testimony was sufficiently certain to permit a damage calculation using these figures.

Appellants' eleventh assignment of error is sustained.

In their final assignment of error, appellants assert that the trial court erred when it refused to give a requested jury instruction. The denied instruction would have stated: "Defendants, Richard and Barbara Chakroff do not have a duty to pay plaintiff any money under the contract until

plaintiff has proven, [*sic*] its right to payments." The trial court's refusal to give this requested jury instruction was proper. The requested instruction assumed that the AIA contract was part of the contract between the parties. Whether the AIA document did constitute part of the contract between the parties was an issue of fact which was submitted to the jury. Also, the trial court properly instructed the jury about the general requirement that plaintiff must prove damages for its actual loss resulting from the breach of the contract by appellants if they found that appellants had wrongfully breached the contract.

Appellants' twelfth assignment of error is overruled.

Appellants' third, eighth and eleventh assignments of error are sustained, and the remaining assignments of error are overruled. The judgment of the trial court is reversed, and the case is remanded to the trial court for further procedure consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

REILLY and BOWMAN, JJ., concur.