## MONEY PAID UNDER MISTAKE OF LAW.

[Circuit Court of Columbiana County.]

SARAH A. METZGER v. JOSEPH O. GREINER ET AL.

Decided, October Term, 1906.

*Money Paid under a Mistake of Law—Will not be Ordered Refunded by a Court of Equity, When—Effect of Change of Law by Judicial Decision.*

1. A court of equity will not order refunded to a trustee money paid him by another trustee under a mistake of law, except when the mistake is mixed with misrepresentation or fraud, or where the ignorance of the complainant has conferred upon the defendant a benefit which he can not in good conscience retain.

2. Where the law is changed by judicial decision, such change will not affect transactions made with reference to the law as it stood previous to such change.

COOK, J.; BURROWS, J., and LAUBIE, J., concur.

Appeal from common pleas court.

The controversy in this action is between Byron S. Ambler, as trustee of Joseph Koll under the insolvent laws of the state, by his cross-petition and the answer thereto of John S. McNutt, receiver of Greiner & Son, who will hereafter be denominated plaintiff and defendant.

Joseph Koll had borrowed from Greiner & Son, who were bankers at Salem, Ohio, about $6,000. To secure the loan Koll deposited a number of shares of the capital stock of the Victor Stove Company, a corporation organized under the laws of Ohio. Subsequently Koll made a general assignment for the benefit of his creditors under the insolvent laws of Ohio, and plaintiff became trustee, succeeding the assignee appointed in the deed of assignment. Difficulties arose in the firm of Greiner & Son, which was a partnership, and John S. McNutt was appointed receiver to settle up the affairs of the partnership. Koll not having paid the loan, the stock deposited with Greiner & Son as security was sold and the proceeds applied

upon the claim due the bank, which was about one-third of the amount then due.

After the appropriation of the proceeds of the sale of the stock to the claim of Greiner & Son, plaintiff declared a dividend in favor of the creditors of Koll, and paid the dividend in favor of Greiner & Son upon the full amount of the loan of $6,000 to the defendant, as he thought under the law he was required to do, and not upon the amount of the claim less the proceeds of the sale of the stock. This court after the payment of the dividend to defendant by plaintiff, in the case of *The State National Bank* v. *Esterly,* decided that in such a case the creditor is only entitled to a dividend upon the balance remaining after deducting the proceeds of the collateral taken to secure the debt; and the case was affirmed by the Supreme Court by a divided court (69 O. S., 24).

After the decision in the Esterly case by the Supreme Court, plaintiff filed his cross-petition in this case, which is the original case in which the receiver was appointed, asking that defendant be required to pay back to him the amount so paid by mistake, as the assets of Koll were not sufficient to pay all his debts. Defendant contests this claim of plaintiff and insists that he has a right to retain the full amount received by him. In the agreed statement of facts submitted to us, the reason assigned why plaintiff paid over to defendant the dividend upon the full amount of the claim of Greiner & Son, and not upon the amount of the claim after deducting the proceeds of the collateral, is that it was the general custom in this state to do so, and that he understood that to be the law, as established by decisions in the highest courts of many of the states, and by the lower courts of this state, and that there was no decision of the Supreme Court upon the question. In the case of *Jelke* v. *Stallo,* 1. Nisi Prius Reports, page 29, it was decided by a very eminent judge that the creditor was entitled to a dividend upon the full amount of his claim, and this opinion is supported by many decisions of different states, as well as of the federal and English courts. *Merrill* v. *National Bank of Jacksonville,* 173 U. S., 131, and cases therein cited.

Plaintiff was a lawyer and was familiar with these decisions, and the payment of the dividend by defendant was a pure mistake of law with no mixture of fact. Furthermore, there is no claim that any misrepresentation or fraud was practiced by defendant, and it could not be said that defendant had any advantage in the transaction that would require a court of equity to interfere any more than a court of law.

The rule in such cases is well stated in Eng. & Am. Enc. of L. (2d Ed.), Vol. 20, page 816:

"It is one of the fundamental maxims of the common law that ignorance of the law excuses no one. It is a maxim founded not only on expediency and policy, but on necessity. 'If ignorance of the law could be admitted in judicial proceedings as a ground of complaint or of defense, courts would be involved and perplexed with questions incapable of any just solution, and embarrassed by inquiries almost interminable, until the administration of justice would become in effect impracticable. There would be but few cases in which one party or the other would not allege it as a ground of exemption; and the extent of the legal knowledge of each individual suitor, not his acts or words, would be the material fact on which judgments would be founded.' It is therefore applied most rigidly at law, and is only relaxed in equity where the mistake is mixed with misrepresentation or fraud, or where the ignorance of the complainant has conferred upon the defendant a benefit which he can not in good conscience retain."

In note 7 it is stated:

"If one of the parties to a contract is in truth ignorant of a matter of law involved therein, and the other party, knowing him to be so, takes advantage of the circumstance, he is guilty of fraud and the court will relieve."

But it is hardly necessary to go outside of our own state for authorities as the case of *Phillips, Executor,* v. *McConica, Guardian,* 59 O. S., 1, is directly in point except it was an action at law. In that case it was held that—

"Money voluntarily paid by an executor, upon distribution, to one not entitled to receive the same, under a mistake of his rights and duties as executor, there being no mistake of fact, can not be recovered back."

That case, like this, was between trustees, the money having been paid by an administrator in the settlement of an estate to a guardian of a minor, which minor the executor assumed was a legatee under the law, but which, in fact, was not the case. The minor had no claim upon the fund whatever, and yet the court says in the opinion:

"The executor had the right to obtain the judgment of the court as to the proper person to receive this money. as was done in *Upson* v. *Noble,* 35 O. S., 655. Revised Statutes, Section 6202. But, knowing all the facts, he did not seek the direction of the court, but relying upon his own judgment, paid the money at his own peril. If he intended to litigate the matter he should have litigated before payment. It is now too late, unless he can show he paid it under a mistake of fact, and this his present petition fails to show."

It is again contended by plaintiff that because at the time of the payment of this dividend to defendant it was the settled law in Ohio that the dividend should be paid upon the full amount of the claim, the money should be ordered paid back. This claim is entirely too broad. At the time of payment there was no decision of our Supreme Court upon the question, and the decision of the Common Pleas Court of Hamilton County in *Jelke* v. *Stallo, supra,* and of the United States Circuit of Appeals for the Sixth Circuit in a case from the Western Division of the Southern District of Ohio, 59 Federal Reporter, 372, could hardly settle the law in the state.

But if the law had been fully settled as claimed by the plaintiff even by our Supreme Court, and a different holding was afterwards made, the result would be the same. It might be important in a controversy between Ambler and the creditors of Koll, but it would not change the question we are considering at all.

"Certainly when the law of a state is changed by judicial decision, it does not open or annul what has been done in other cases of a like kind for years before, under a different understanding of the law. To permit such effect of the subsequent decision would lead to the most mischievous consequences."

In the case of *Lyon* v. *Richmond*, 2 Johnson's Chancery Report, 51, it was held, Chancellor Kent delivering the opinion, that—

"1. A subsequent decision of the court of errors in a different case, giving a different exposition of a point of law from the one declared by the Supreme Court, where the parties to a suit entered into an agreement relative to such suit, can have no retrospective effect so as to destroy the operation of such agreement.

"The court does not relieve parties from their acts and deeds fairly done, on a full knowledge of the facts, though under a mistake of law. Every person is charged, at his peril, with a knowledge of the law."

This decision was made in 1816, and it seems to have been generally followed in all the states. *Pittsburg & Lake Angeline Iron Co.* v. *Lake Superior Iron Co.*, 118 Mich., 109, and cases and authorities there cited.

Finding and decree in favor of defendant, dismissing the cross-petition of plaintiff at his costs.

*Carey & Mullins*, for plaintiff.

*S. W. Ramsey*, for defendant.