SHUMAKER, APPELLEE, v. OLIVER B. CANNON &
SONS, INC., APPELLANT, ET AL.

[Cite as Shumaker v. Oliver B. Cannon & Sons, Inc. (1986),
28 Ohio St. 3d 367.]

(No. 86-236—Decided December 30, 1986.)

*Landskroner & Phillips Co., L.P.A.,* and *Lawrence Landskroner,* for appellee.

*Frutig, Polito & Travis Co., L.P.A., Thomas R. Frutig* and *D. John Travis,* for appellant.

*Per Curiam.* Appellant contends the trial court erred in admitting expert testimony as to the mere possibility of a causal connection between the chemical exposure and appellee's terminal cancer. We agree.

Dr. Kravitz, a medical expert for appellee, testified that "with a reasonable degree of probability, it is likely that this combination of those three chemicals *could* have caused the cancer." (Emphasis added.)

It is well-settled that the establishment of proximate cause through medical expert testimony must be by probability. At a minimum, the trier of fact must be provided with evidence that the injury was more likely than not caused by defendant's negligence. See *Cooper* v. *Sisters of Charity* (1971), 27 Ohio St. 2d 242, 252 [56 O.O.2d 146]. Opinions expressed with a lesser degree of certainty must be excluded as speculative.[3]

The evidence seeking to causally connect appellee's pancreatic cancer to his exposure to Liquid Envelope Blue was merely speculative and conjectural, and did not rise to the requisite standard of probability. See *Brandt* v. *Mansfield Rapid Transit, Inc.* (1950), 153 Ohio St. 429 [41 O.O. 428]. Dr. Rudolph specifically stated that he could not causally relate the pancreatic cancer to the exposure with a reasonable degree of pharmacologic certainty. Although Dr. Kravitz did state that he was testifying to a "reasonable degree of probability," he modified his statement by the word "could." Thus, he was not testifying that the cancer was causally linked to the exposure, but only that such a causal connection could, but

---

[3] "Proof of possibility is not sufficient to establish a fact; probability is necessary. * * *" *Drew* v. *Indus. Comm.* (1940), 136 Ohio St. 499, 501 [17 O.O. 113]; see, also, *Kuhn* v. *Banker* (1938), 133 Ohio St. 304, 312 [10 O.O. 373]. "Probable is more than 50% of actual.* * *" *Cooper, supra,* at 253. Evidence which only shows that a condition could have been the result of an injury is "insufficient proof to warrant submission of the cause to the jury.* * *" *Drew* v. *Indus. Comm., supra,* syllabus. See, also, *Drakulich* v. *Indus. Comm.* (1940), 137 Ohio St. 82 [17 O.O. 398]; *Brandt* v. *Mansfield Rapid Transit, Inc.* (1950), 153 Ohio St. 429 [41 O.O. 428]; *Gedra* v. *Dallmer Co.* (1950), 153 Ohio St. 258 [41 O.O. 274].

not necessarily did, exist. Therefore, this portion of Dr. Kravitz's testimony should not have been admitted into the record over appellant's objections. The trial court erred to the prejudice of appellant in allowing the jury to consider this testimony.

Appellant further contends the trial court abused its discretion in allowing appellee to introduce the foregoing expert testimony over repeated objections purporting to establish a causal connection between the pancreatic cancer and the chemical exposure because no pretrial notice had been given regarding this claim. This contention possesses merit. While the admissibility of evidence is a matter generally within the sound discretion of the trial court, the trial court does not have unbridled discretion in this regard. See *Schaffter* v. *Ward* (1985), 17 Ohio St. 3d 79, 80; *Calderon* v. *Sharkey* (1982), 70 Ohio St. 2d 218 [24 O.O.3d 322].

"One of the purposes of the Rules of Civil Procedure is to eliminate surprise. This is accomplished by way of a discovery procedure which mandates a free flow of accessible information between the parties upon request, and which imposes sanctions for failure to timely respond to reasonable inquiries.* * *" *Jones* v. *Murphy* (1984), 12 Ohio St. 3d 84, 86.

Civ. R. 26(E)(1) provides that "* * * [a] party is under a duty seasonably to supplement his response with respect to any question directly addressed to * * * (b) the identity of each person expected to be called as an expert witness at trial and the subject matter on which he is expected to testify." An objective of this rule is to provide opposing counsel with updated and complete discovery regarding the substance of expert testimony. This duty to supplement responses on the subject matter of expert testimony is necessary because preparation for effective cross-examination is especially compelling where expert testimony is to be introduced. See *Smith* v. *Ford Motor Co.* (C.A. 10, 1980), 626 F. 2d 784; *Scott & Fetzer Co.* v. *Dile* (C.A. 9, 1981), 643 F. 2d 670.

The interrogatories propounded to appellee included a request to "[i]dentify all persons who [*sic*] you expect to call as expert witnesses at trial, including a summary of the testimony that each such witness is expected to give." Appellee listed Dr. Kravitz as a witness in a supplemental response to this interrogatory, but failed to further supplement his response to include Dr. Kravitz's testimony about the potential causal link between appellee's exposure and his cancer. This failure to properly supplement this response violated Civ. R. 26(E)(1). While appellant knew that appellee had pancreatic cancer, appellant was unaware there would be a claim that the chemical exposure caused the cancer.

Expert testimony may be excluded as a sanction for the violation of Civ. R. 26(E)(1)(b). See *Jones* v. *Murphy, supra,* at 86; *Huffman* v. *Hair Surgeon, Inc.* (1985), 19 Ohio St. 3d 83. In *Shelak* v. *White Motor Co.* (C.A. 5, 1978), 581 F. 2d 1155, 1159, a case involving surprise which had almost identical facts as the case at bar, the court found that the trial court committed an abuse of discretion by allowing a medical expert to testify about

a previously undisclosed causal connection between an injury and a subsequent medical problem, stating:

"The failure of the plaintiff candidly to reveal his claim of injury * * * goes to the question of damages. Plaintiff's disregard for the federal rules of discovery in this area created a 'trial by ambush' which those rules are designed to prevent.* * * [I]f discovery has any purpose, plaintiff's opponent was entitled, upon the unveiling of the * * * contention, to a reasonable opportunity to prepare to defend against it."

Similarly in *Scott & Fetzer Co.* v. *Dile, supra,* at 673-674, the court held that it was an abuse of discretion to allow a party to introduce testimony by previously undisclosed witnesses and to use a new theory of the case.

There appears to be an element of "ambush" in the present case. Appellee never disclosed that he was asserting the cancer claim prior to trial and, in fact, during the argument on the motion *in limine* immediately preceding the trial, indicated he did not know what the experts would say on that subject. Therefore, appellant had *no* discovery on this purported causal connection in spite of diligent efforts toward this end.

The trial court's error with respect to the surprise was compounded by its submission to the jury of the actual expert testimony which did not rise to the requisite standard of opinion testimony. This error was prejudicial since it allowed the jury to consider inadmissible evidence on a highly inflammatory subject—terminal pancreatic cancer.

For these reasons the court of appeals' decision is reversed and the cause is remanded for a new trial.

*Judgment reversed*
*and cause remanded.*

HOLMES and WRIGHT, JJ., concur.

LOCHER and DOUGLAS, JJ., concur in judgment only.

CELEBREZZE, C.J., SWEENEY and C. BROWN, JJ., dissent.

SWEENEY, J., dissenting. I must respectfully dissent from the majority's reversal in the cause *sub judice,* because I believe that it seriously erodes the discretion of the trial court by, *inter alia,* substituting this court's judgment for that of the trier of fact.

While the majority correctly states the standard that the establishment of proximate cause through expert medical testimony must be by probability, *Cooper* v. *Sisters of Charity* (1971), 27 Ohio St. 2d 242 [56 O.O.2d 146], the majority contorts this standard into one that now requires the plaintiff to show to a *certainty* that defendant's negligence was the proximate cause of plaintiff's injuries. In other words, the majority has

established a higher standard of proof than has previously existed in this state. The majority seizes upon one word in Dr. Kravitz's statement, the word "could," and through an argument based solely on semantics, attempts to use that word to contradict the meaning of the statement as a whole. A careful review of Dr. Kravitz's entire statement reveals, clearly, that he was able to make the causal connection with the requisite degree of probability. Thus, in my view, the trial court properly applied the *Cooper* standard by admitting the expert testimony in issue.

Particularly troubling with the majority's analysis is that it fails to give the trial court's disposition the presumption of regularity and correctness that it deserves. See *Seasons Coal Co.* v. *Cleveland* (1984), 10 Ohio St. 3d 77.

Additionally, the majority opinion finds abuse of discretion on the part of the trial judge, but fails to articulate what the term "abuse of discretion" really means. As this court has stated many times, " '[t]he term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Steiner* v. *Custer* (1940), 137 Ohio St. 448 [19 O.O. 148] * * *.' " *Blakemore* v. *Blakemore* (1983), 5 Ohio St. 3d 217, 219.

In this context, we have also observed:

" '[A]n abuse of discretion involves far more than a difference in * * * opinion * * *. The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations. In order to have an "abuse" in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias. * * *' " *State* v. *Jenkins* (1984), 15 Ohio St. 3d 164, 222. See, also, *Huffman* v. *Hair Surgeon, Inc.* (1985), 19 Ohio St. 3d 83.

Viewed against this backdrop, one could hardly term the trial court's actions an abuse of discretion as the majority curiously asserts. The majority's conclusion in this vein seriously subverts a trial judge's ability in the truth-seeking process to effect a just result.

In conclusion, I believe that the trial court acted within its scope of discretion by admitting the expert testimony in issue; therefore, I would affirm the unanimous decision of the court of appeals in upholding the trial court's judgment.

CELEBREZZE, C.J., and C. BROWN, J., concur in the foregoing dissenting opinion.

CLIFFORD F. BROWN, J., dissenting. The present action presents two important issues. The first relates to the degree of certainty involved in the testimony of expert witnesses pertaining to the causal link between appellee Shumaker's injuries and his exposure to certain toxic chemicals at

the hands of Oliver B. Cannon & Sons, Inc. ("Cannon"). The second issue relates to the effect of the admission into evidence of testimony pertaining to Shumaker's cancer if the admission of that testimony was improper. I find that Shumaker succeeds on both of the relevant issues; thus, I believe that the judgment of the court of appeals affirming Shumaker's favorable jury verdict must be upheld. Therefore, I respectfully dissent from the opinion of the majority.

Cannon was in charge of spray-coating the inside of the Perry Nuclear Power Plant reactor with a sealant called Liquid Envelope Blue, a combination of three toxic chemicals: methylene chloride, methyl ethyl ketone and methyl isobutyl ketone. The painters spraying these chemicals within the reactor were supplied with special respirators to filter out the chemicals. The chemicals were so toxic that the respirator filters would be effective for only two to three hours. The employees, such as Shumaker, working within the reactor on projects other than the spraying of the toxic chemical sealant were not provided with respirator filters or protection of any type.

The chemicals in Liquid Envelope Blue, when exposed to either an open flame or a very hot surface, convert to phosgene gas, also known as mustard gas. An electrical arc typically used in welding would easily provide the sufficient temperatures and conditions necessary to convert Liquid Envelope Blue into mustard gas. Significantly, this type of welding was in process in parts of the same enclosed area of the reactor in which Cannon was spraying Liquid Envelope Blue.

Finally, I note that Cannon was not only aware that exposure to Liquid Envelope Blue had an adverse effect on individuals exposed to the toxic substance, but in fact deliberately exposed individuals to the toxins of Liquid Envelope Blue precisely because of this adverse effect. Because exposure to Liquid Envelope Blue would make the employees too sick to work, their work was pushed back from the first shift to the second shift. This resulted in the employer receiving an extra twenty percent of labor costs under the construction contract.[4]

The first issue of law involved in this appeal relates to the standard of certainty required of medical expert testimony.

A pharmacologist testified that the particular toxins to which Shumaker was exposed had been linked to cancer, but he could not say with complete certainty that the exposure directly related to Shumaker's pancreatic cancer. However, a second expert, one Dr. Kravitz, also testified concerning the causation of the cancer. In affirming the trial court, the

---

[4] The majority opinion speaks of the "ambush" in this action. I note in passing that if any "ambush" did occur in this case, it was actually sprung by Cannon. The victims of this deadly "anything for a profit" trap were the many innocent employees intentionally exposed to the deadly toxins of Liquid Envelope Blue within the closed confines of the nuclear reactor.

court of appeals focused on the following expert medical testimony from Dr. Kravitz:

"Q. (By Mr. Landskroner): Doctor, can we medically connect up the terminal pancreatic cancer that the patient has and the condition he sustained as a result of the occurrence that happened in the reactor?

"Mr. Travis: Objection.

"The Court: If he can state with a reasonable degree of medical certainty, he may answer.

"Mr. Landskroner: Or probability.

"The Court: Or probability, that's correct.

"A. Uh, with a reasonable degree of probability, it is *likely* that this combination of those three chemicals could have caused the cancer." (Emphasis added.)

This court has clearly stated that medical testimony on the issue of causation should be stated in terms of the probability of the causal relationship. *Fox* v. *Indus. Comm.* (1955), 162 Ohio St. 569 [55 O.O. 472]. More recently, as the majority correctly indicates, we have stated that "[t]raditional proximate cause standards require that the trier of the facts, at a minimum, must be provided with evidence that a result was more *likely* than not to have been caused by an act * * *." (Emphasis added.) *Cooper* v. *Sisters of Charity* (1971), 27 Ohio St. 2d 242, 251 [56 O.O.2d 146] (words indicating that the causal relationship that is "maybe some place *around* 50%" held not to constitute evidence of probability).

In analyzing the testimony of Dr. Kravitz, the majority opinion improperly views the word "could" in Dr. Kravitz's testimony out of context and separate and apart from the testimony of the medical experts. When taken in context, the use of the word "could" does not render the doctor's testimony "possibility testimony." Unlike *Cooper*, where the expert used the words "maybe" and "around," the testimony in the instant action connotes that there *is* a probability; that is, "more than 50% of actual." *Cooper, supra,* at 253. The *Cooper* court, in fact, actually defined "probability" as "that which is more *likely* than not." (Emphasis added.) *Id.* It is significant, therefore, that Dr. Kravitz also testified that the causation was "likely." Thus, Dr. Kravitz's testimony, together with the expert pharmacological testimony that these toxins[5] have been linked to cancer,

---

[5] Dr. Stephen Rudolph testified about the toxins in Liquid Envelope Blue and stated:

"In one other recent finding about methylene chloride is that it can cause transformation of normal cells in culture. Transformation is a process whereby the cells go from a normal rate of growth to a rate of growth that would be the same as cancer cells."

The testimony continued:

"Q. That is with a metabolistic effect?

"A. Right.

"Q. That is a precursor to cancer?

"A. Right.* * *"

provided a sufficient question of fact for a jury to consider. This is precisely the course followed by the learned trial judge below.

Notwithstanding the question of whether the expert medical testimony speaks with sufficient legal probability, the issue of the propriety of the admission of any testimony concerning cancer has been raised by Cannon.

It is uncontested that trial courts have great discretion in admitting evidence into proceedings. *Huffman* v. *Hair Surgeon, Inc.* (1985), 19 Ohio St. 3d 83. Absent an "abuse of discretion," rulings on the admissibility of evidence by a trial court will not be disturbed by courts on appellate review. An abuse of discretion " '* * * connotes more than an error of law or of judgment, it implies that the court's attitude is unreasonable, arbitrary or unconscionable.* * *' " *Id.* at 87. For an abuse, the result must be "so palpably and grossly violative of fact and logic that it evidences * * * not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias." *State* v. *Jenkins* (1984), 15 Ohio St. 3d 164, 222. The standard which Cannon must meet to show that the trial court abused its discretion in admitting testimony related to Shumaker's cancer is very high. I believe he fails to meet that standard.

In the present action, Cannon knew of Shumaker's cancer. The likelihood of cancer testimony could not have been a complete surprise as Cannon claims, since Cannon, in fact, filed a pretrial motion *in limine* seeking to prevent the testimony! Shumaker's opposition to the motion, as well as the trial court's denial of this motion, provided at least some advance notice of the likelihood of cancer testimony being offered into evidence. Cannon knew the treating physician was going to testify. Yet, Cannon never requested a supplemental deposition to update the doctor's testimony. Furthermore, there is no claim or showing that a sanction less Draconian than the testimony's complete exclusion would not have prevented Cannon's claim of "unfair surprise." Cannon had ample opportunity to request an extension of time prior to trial, a continuance during trial, a court order compelling discovery, or as was previously mentioned, a supplemental deposition of the expert who was to testify, but Cannon failed to take advantage of any of these obvious remedies. Yet, Cannon comes before this court after the fact and asks that we rule the admission of any cancer testimony reversible error.

The trial court was in the best position to determine the circumstances under which testimony should be excluded. Furthermore, the trial court was in the best position to determine whether Shumaker actually was unable to demonstrate a link between the cancer and the plaintiff's exposure to hazardous chemicals, until it became too close to the time of trial to enable him to give proper notice to Cannon. Finally, the trial court was in the best position to rule on the proper remedy, even if Shumaker should

have given notice to Cannon at an earlier time. The trial court in the instant action felt that, in order to do substantial justice within the mandate of the Ohio Rules of Civil Procedure, Cannon's motion *in limine* as to the cancer testimony must be denied; however, the trial court *did* find that justice required halting the trial and allowing Cannon to *voir dire* the medical expert outside the jury's presence prior to Cannon's cross-examination of him. This provided Cannon with the perfect opportunity to request a continuance, an opportunity to which it never availed itself.

Whether we would have done things differently had we been standing in the shoes of the trial court is not the issue of this case. The majority decision usurps those functions uniquely within the province of the trial court. This I refuse to do.

In closing, I note that this action is primarily a pulmonary injury case. The vast majority of the evidence relates to the serious injuries caused to Shumaker's lungs by the exposure to toxic fumes. Shumaker contracted bronchitis, bronchiolitis and pulmonary fibrosis. He suffered from dizziness and loss of consciousness and was unable to work after the final exposure to the deadly toxins. Shumaker could not even work around the house, nor tend his small garden, nor even walk for any distance. The $500,000 compensatory damage and the $250,000 punitive damage awards by the jury are more than supportable based solely on the suffering and lost wages of Shumaker and the heinous acts of Cannon. Thus, there is no indication that passion or prejudice entered into the verdict of the jury. Appellant Cannon has come before this court waving a giant red herring in the form of pancreatic cancer evidence, and the majority has, unfortunately, focused their eyes on this insignificant issue.

In light of the foregoing, I am compelled to dissent from the decision of the majority.

CELEBREZZE, C.J., and SWEENEY, J., concur in the foregoing dissenting opinion.