STARKEY et al., Appellants,

v.

ST. RITA'S MEDICAL CENTER, Appellee.

[Cite as Starkey v. St. Rita's Med. Ctr. (1997), 117 Ohio App.3d 164.]

Court of Appeals of Ohio,
Third District, Allen County.

No. 1–96–43.

Decided Jan. 8, 1997.

166

*Richard E. Siferd,* for appellants.

*Robert L. Balyeat,* for appellee.

HADLEY, Presiding Judge.

Plaintiffs-appellants, Steven and Carol Starkey ("appellants"), appeal from the judgment for defendant-appellee, St. Rita's Medical Center ("St. Rita's"), by the Allen County Common Pleas Court following a jury trial. Appellants alleged that St. Rita's negligently advised appellants to delay seeking treatment for Mr. Starkey's suspected heart attack and, as a result, magnified the harm caused to Mr. Starkey.[1]

At approximately 5:00 p.m. on October 18, 1993, appellant, Steven Starkey, a thirty-six-year-old man, began sweating, belching, and feeling pressure in his chest, and became fatigued while working at his place of employment. After resting for a brief period of time at work, he proceeded home. While at home, the symptoms continued. Not knowing the source of his distress, Mr. Starkey took an antigas medication at approximately 7:00 p.m. Shortly thereafter, Mr. Starkey fell asleep.

Concerned about her husband's well-being, Mrs. Starkey called "The Professionals," a call-in and referral service provided to the general public, at St. Rita's, seeking advice on her husband's physical condition. The time of the call was in dispute at the time of trial. Appellants alleged that the call was placed at approximately 7:15 to 7:30 p.m. St. Rita's phone log indicates that the call was placed at 9:16 p.m.

---

1. Mrs. Starkey also asserted a claim for loss of consortium.

The contents of the conversation between Mrs. Starkey and the registered nurse handling the phone call are unclear. Appellants contend that Mrs. Starkey described Mr. Starkey's symptoms as stated above. Appellants state that the nurse advised that Mr. Starkey might be exhibiting the symptoms of a heart attack, but, upon learning that Mr. Starkey was asleep, told Mrs. Starkey to wait until he woke before determining whether it was necessary to bring Mr. Starkey to the hospital for treatment. St. Rita's, however, argues that this advice was not given, but the nurse who spoke with Mrs. Starkey cannot remember the phone conversation. The documentation from the conversation indicates that the nurse spoke with Mrs. Starkey about the warning signs of a heart attack, sent appellants literature about, among other things, heart attacks, and did not make a recommendation about how to treat Mr. Starkey. St. Rita's contends that if Mrs. Starkey would have been definitive in her description of Mr. Starkey's symptoms, the nurse would have advised that Mr. Starkey be brought immediately to the hospital for treatment for a heart attack.

Shortly after midnight, Mr. Starkey woke still· exhibiting the same symptoms. Appellants immediately went to St. Rita's for treatment. Mr. Starkey was diagnosed as suffering from a heart attack and was treated accordingly.[2] Since his heart attack, Mr. Starkey has not worked outside the home. Although he has been medically cleared and encouraged by his physician to perform light duty work, he has not been cleared to return to his previous employment, and contends that having preschool children at home does not allow him to return to any gainful employment for financial reasons.

On March 22, 1995, appellants filed suit against St. Rita's, alleging that the advice given to appellants delaying treatment caused additional injury to Mr. Starkey. On May 14, 1996, a jury trial commenced, and after two and one-half days of trial a general verdict was returned for St. Rita's. This appeal follows with appellants asserting one assignment of error:

"The improper exclusion of damage evidence and the failure to instruct a jury on damages palpably prejudiced the case of appellants so as to entitle them to a new trial."

Appellants assert in their sole assignment of error the following issues for this court to address: (1) whether the trial court erred by not admitting evidence of Mr. Starkey's past earnings or future employability, (2) whether such an exclusion of evidence prevented appellants from proving proximate cause, and (3) whether such an exclusion so palpably prejudiced appellants case to warrant a new trial.

---

2. Appellants do not contend that the treatment Mr. Starkey received after arriving at the hospital was in any way negligent.

Appellants contend that the advice received from St. Rita's to wait until Mr. Starkey woke before seeking treatment caused injury to Mr. Starkey.[3] Specifically, appellants allege that St. Rita's caused pecuniary damage, pain and suffering, and hedonic damage. The pecuniary damage, appellants contend, is the loss of past and future earnings, but the trial court did not permit the admission of evidence of Mr. Starkey's past earnings or future employability to allow the jury to determine lost earnings.[4]

"[I]n order to maintain a cause of action in medical malpractice, three elements must be proved. Plaintiff must establish the applicable standard of care, usually through expert testimony; show a negligent failure on the part of the defendant to render treatment in conformity with the standard of care; and demonstrate that the resulting injury was proximately caused by defendant's negligence." *Ulmer v. Ackerman* (1993), 87 Ohio App.3d 137, 140, 621 N.E.2d 1315, 1317; *Bruni v. Tatsumi* (1976), 46 Ohio St.2d 127, 75 O.O.2d 184, 346 N.E.2d 673, paragraph one of the syllabus. This appeal focuses on the third element: the establishment of proximate causation.

"In medical malpractice cases, the general rule is that the plaintiff must prove causation through medical expert testimony in terms of probability to establish that the injury was, more likely than not, caused by the defendant's negligence." *Roberts v. Ohio Permanente Med. Group, Inc.* (1996), 76 Ohio St.3d 483, 485, 668 N.E.2d 480, 482; *Shumaker v. Oliver B. Cannon & Sons, Inc.* (1986), 28 Ohio St.3d 367, 369, 28 OBR 429, 430–431, 504 N.E.2d 44, 46–47.[5]

---

3. To fully comprehend appellants' assertion, an extremely simplified analysis into the treatment of heart attacks is necessary. The philosophy of those in the medical community is that the sooner treatment for a heart attack can commence the higher the probability the effects of the heart attack can be lessened. A heart attack, similar to the one suffered by Mr. Starkey, is the result of a blood clot stopping or sharply reducing the flow of blood to the heart muscle. Without a fresh supply of oxygenated blood that portion of the heart muscle begins to die. Once the cells of the muscle die, the effects are irreversible. The remaining living cells in that portion of the heart cannot thereafter perform the duty of pumping blood to the remainder of the body as efficiently as before the heart attack. The heart muscle cells that do not receive the oxygenated blood die rather rapidly. Thus, the sooner the patient receives drugs to dissolve the blood clot, the sooner the oxygenated blood can flow to the heart muscle and the cells receive oxygen, preventing further cell death. This cell death occurs while a person is awake or asleep.

4. It is important to remember that appellants are not attempting to hold St. Rita's responsible for the onset of the heart attack. Mr. Starkey admitted that he felt that "the main factor" leading to his heart attack was his work environment.

5. The court in *Shumaker* continued, stating at 369, 28 OBR at 430–431, 504 N.E.2d at 46, that " '[p]roof of possibility is not sufficient to establish a fact; probability is necessary. * * *' *Drew v. Indus. Comm.* (1940), 136 Ohio St. 499, 501 [17 O.O. 113, 114, 26 N.E.2d 793, 794]; see, also, *Kuhn v. Banker* (1938), 133 Ohio St. 304, 312 [10 O.O. 373, 376, 13 N.E.2d 242, 245–246]. 'Probable is more than 50% of actual. * * *' *Cooper, supra,* at 253 [56 O.O.2d at

"Opinions expressed with a lesser degree of certainty must be excluded as speculative." *Shumaker*, 28 Ohio St.3d at 369, 28 OBR at 430, 504 N.E.2d at 46. This rule is also known as the "all-or-nothing" approach.

Thus, to establish proximate cause, appellants needed to introduce evidence that it was a probability that the alleged negligence of St. Rita's was the cause for Mr. Starkey's damage. To accomplish this burden, appellants needed to demonstrate that Mr. Starkey could have returned to his former employment "but for" the alleged negligence of St. Rita's in advising appellants to delay seeking treatment. However, no witness, expert or lay, testified that if Mr. Starkey received treatment as early as appellants argue he could have received treatment, he would be able to return to his former employment. Appellants' expert stated that if Mr. Starkey received the treatment as early as appellants allege it should have been administered, his heart may have been at the lower limit of the normal for men his age. The expert, however, does not state that Mr. Starkey could have returned to his former employment. The expert was unclear as to what duties Mr. Starkey performed for his employer prior to the heart attack. Just because the expert speculated that Mr. Starkey's heart would be in the lower limit of the normal range does not mean that the jury could infer that the appellant would be free to return to his former job duties.[6] The evidence, in fact, had a tendency to prove that the majority of Mr. Starkey's injury was solely the result of his heart attack and not associated with the delay in receiving treatment.[7]

---

152, 272 N.E.2d at 104]. Evidence which only shows that a condition could have been the result of an injury is 'insufficient proof to warrant submission of the cause to the jury. * * *' *Drew v. Indus. Comm., supra*, syllabus."

6. Mr. Starkey's job duties as the manager of a battery shop included mixing battery acid, cutting steel, heavy lifting, and performing the administrative tasks of a business that was unable to pay its own operating costs.

7. By appellants' expert witness's own testimony, the damage done to a heart following a heart attack is a rapid procedure with the majority of damage occurring within the first three to four hours after the attack. Taking the appellants' version of the events on October 18, 1993, Mr. Starkey began feeling chest pains at 5:00 p.m. Assuming Mrs. Starkey called St. Rita's at 7:15 p.m. and the appellants lived approximately five minutes from the hospital, they could not have arrived, at the earliest, until 7:20 p.m. This time frame allows no time for the actual phone call made by Mrs. Starkey to St. Rita's. St. Rita's records revealed that the phone call lasted twenty-one minutes. The shortest duration of time stated by the expert witnesses before a patient is administered the blood-clot-dissolving drug after arrival at the hospital was one hour. In the present case, Mr. Starkey was not given the drug until he had been in the hospital for one hour and forty-five minutes. Appellants' expert stated that this time frame was not unreasonable. Appellants' expert testified that he was familiar with cases where the drug began dissolving the blood clot approximately fifteen minutes after administration. However, the drug is not effective for all patients, and a more realistic time frame, according

With no evidence presented to the jury supporting the contention that Mr. Starkey could have returned to his former employment "but for" the alleged negligence of St. Rita's, the jury could not find St. Rita's liable for appellants' pecuniary damage. Appellants did not meet their burden of demonstrating "that the injury was more likely than not caused by [the alleged] negligence [of St. Rita's]." *Shumaker*, 28 Ohio St.3d at 369, 28 OBR at 430, 504 N.E.2d at 46. Thus, the trial court did not err by excluding evidence of Mr. Starkey's past earnings or future employability.

Rather than merely affirming the trial court's decision at this point, we are presented with an unusual set of circumstances that leaves the status of this action far from resolution.

On August 28, 1996, the Ohio Supreme Court in *Roberts v. Ohio Permanente Med. Group, Inc.* adopted a new cause of action in Ohio: the "loss of chance of recovery or survival" cause of action. In adopting the "loss of chance" action, the court expressly overruled its decision in *Cooper v. Sisters of Charity of Cincinnati, Inc.* (1971), 27 Ohio St.2d 242, 56 O.O.2d 146, 272 N.E.2d 97, which established the "all-or-nothing" approach, the approach utilized by the trial court in the present action, meant that unless a claimant could prove by a reasonable probability that the medical provider was the proximate cause of claimant's injury, the claimant would not succeed in a negligence action against the medical provider. Application of the "all-or-nothing" approach to all medical malpractice cases prevented those persons "who [were] already suffering from some disease or disorder at the time the malpractice occurred, [from] recover[ing] for his or her 'lost chance' even though the possibility of survival or recovery is less than probable." *Roberts*, 76 Ohio St.3d at 485, 668 N.E.2d at 482. The "all-or-nothing" approach was utilized in the present action because the "loss of chance" approach was not adopted until three months after the trial of the current action.

█ In *Peerless Elec. Co. v. Bowers* (1955), 164 Ohio St. 209, 210, 57 O.O. 411, 411, 129 N.E.2d 467, 468, the Ohio Supreme Court stated that when "a decision of a court of supreme jurisdiction overrul[es] a former decision [it becomes] retrospective in its operation, and the effect is not that the former was bad law,

---

to the expert witnesses, is one hour before a beneficial impact can be detected. Analyzing appellants' own time frame, three hours and thirty minutes passed from the time the heart attack began before effective treatment, at the earliest, could have been detected. Thus, most of the damage to Mr. Starkey's heart had already been done.

If the phone call took place at 7:15 p.m., as appellants assert, and the actual time for the phone call, the actual time to administer the drug, and the more typical time for the drug to take effect (one hour) are used, a lapse of five hours and twenty-six minutes would have taken place between the onset of the heart attack and the probable time when the drug began taking effect, if it had any impact at all.

but that it never was the law." See *Deskins v. Young* (1986), 26 Ohio St.3d 8, 10–11, 26 OBR 7, 9, 496 N.E.2d 897, 899.

■ "Certainly [however] when the law of a state is changed by judicial decision, it does not open or annul what has been done in other cases of a like kind for years before, under a different understanding of the law." *Metzger v. Greiner* (1906), 9 Ohio C.C. (N.S.) 364, 367. Only "if the law has [not] been fully settled as claimed by the plaintiff" does the retrospective application apply. See *Metzger*, 9 Ohio C.C. (N.S.) at 367.

■ In the case *sub judice*, the new "loss of chance" cause of action was not yet in existence at the time of trial. However, appellants, by appealing the decision of the trial court have kept this action alive. During this appeal, the Supreme Court adopted the new "loss of chance" cause of action to supplement the "all-or-nothing" approach. Thus, we must, pursuant to *Peerless Elec. Co.* apply the new law as enunciated in *Roberts* to the present action.

■ The *Roberts* decision states that those "who [are] already suffering from some disease or disorder at the time [of] the malpractice * * * can recover for his or her 'lost chance.'" *Roberts*, 76 Ohio St.3d at 485, 668 N.E.2d at 482. Those plaintiffs utilizing this new cause of action no longer must prove causation in terms of probability through the medical expert to establish that the injury was, more likely than not, caused by the defendant's negligence. *Id.* at 485–486, 668 N.E.2d at 482–483. "Although the plaintiff still has the burden of persuading the jury by a preponderance of the evidence that defendant brought about the harm plaintiff has suffered, the jury, rather than the medical expert, is given the task of balancing probabilities." *Id.* at 486–487, 668 N.E.2d at 483.

■ "In order to maintain an action for the loss of a less-than-even chance of recovery or survival, the plaintiff must present expert medical testimony showing that the health care provider's negligent act or omission increased the risk of harm to the plaintiff. It then becomes a jury question as to whether the defendant's negligence was a cause of the plaintiff's injury or death. Once this burden is met, the trier of fact may then assess the degree to which the plaintiff's chances of recovery or survival have been decreased and calculate the appropriate measure of damages." *Id.* at 488, 668 N.E.2d at 484.

■ The *Roberts* decision, thus, directly affects the present case. The appellants in the present case presented expert medical testimony attempting to demonstrate that the act or omission of St. Rita's increased the risk of harm to Mr. Starkey, a man suffering from a disorder at the time of the alleged malpractice. Appellants' expert testified that had Mr. Starkey received treatment as early as appellants argue that treatment should have been administered, Mr. Starkey's heart ejection fraction would have been ten to fifteen percent higher, and within the lower limit of normal. Additionally, the expert testified

that Mr. Starkey's life expectancy could be shortened ten to fifteen years because of the lower ejection fraction.

Under *Roberts,* the trier of fact must decide "whether the defendant's negligence was a cause of the plaintiff's injury * * * and then assess the degree to which the plaintiff's chances of recovery or survival have been decreased and calculate the appropriate measure of damages." *Id.* at 488, 668 N.E.2d at 484. "To ascertain the amount of damages, the trial court must instruct the trier of fact to consider the expert testimony presented and (1) determine the total amount of damages from the date of the alleged negligent act or omission, including * * * *lost earnings* and loss of consortium; (2) ascertain the percentage of the patient's lost chance of survival or recovery; and (3) multiply that percentage by the total amount of damages." (Emphasis added.) *Id.* at 489, 668 N.E.2d at 485.

In the present case, if interrogatories had been submitted to the jury, the basis of the jury's decision would be on the appellate record. Without the benefit of interrogatories, we cannot determine the basis of the jury's decision. With a general verdict, the record does not reveal (1) whether the jury found that St. Rita's was not negligent or (2) whether the jury found St. Rita's negligent but that the Starkeys did not prove by a reasonable probability that St. Rita's was the proximate cause of Mr. Starkey's injury. If the jury based its verdict on the reasonable probability standard, the verdict was reached in error, pursuant to *Roberts v. Ohio Permanente Med. Group, Inc.* Consequently, under *Roberts,* the appellants in the present case no longer have to prove proximate causation by a reasonable probability.

Additionally, under *Roberts,* if the plaintiff presents medical expert testimony showing that the defendant increased the risk of harm to the plaintiff, evidence of lost earnings is admissible to determine the defendant's potential liability.

Although a retroactive application of the *Roberts* decision may allow appellants to amend their complaint and restart the judicial process, we are bound by the precedent of our Supreme Court. Thus, the trial court improperly excluded evidence of appellant's lost earnings and future employability on the basis that appellants were unable to demonstrate by a reasonable probability that St. Rita's was the proximate cause of appellants' injuries. Therefore, we reverse and remand this cause to the trial court for action consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

EVANS and SHAW, JJ., concur.