Martin Concrete and Trucking ("Martin Concrete") appeals from a judgment of the Dayton Municipal Court, which ordered it to pay $1,254.18 to Virgil Morris.
The facts and procedural history are as follows.
In August 1995, the City of Dayton had hired Martin Concrete to replace a curb on the north side of Pleasant Street in front of a rental property owned by Morris. The DPL gas lines in the vicinity of the excavation project included the gas "main" line on the north side of the street and company lines which ran under the street to each of the properties on the south side, including Morris' property. Near the curb in front of each property, the company lines intersected with curb stops, which delineated the point at which the Dayton Power and Light Company's ("DPL") responsibility ended and the homeowner's responsibility for the line began. The portion of the pipes running from the curb stop to the house was called the service line.
While digging out the curb opposite Morris' property, Martin Concrete struck a DPL gas line with a backhoe. The damaged section of the pipe was DPL's responsibility, and it was repaired by DPL. After this accident, however, Morris experienced leaks in the service lines on his property as well that forced DPL to turn off the flow of gas to Morris' property. Although Morris' lines had not been directly affected by the backhoe, they had been attached to the line that was struck and dislodged. Morris hired Waker Plumbing to repair the service lines on his property at a cost of $1,254.18.
Morris filed a complaint against DPL and Martin Concrete on December 26, 1996. Morris alleged that Martin Concrete had acted negligently in cutting the gas line, thereby damaging his service lines, and that DPL had acted negligently in installing the gas lines too close to the ground's surface. A bench trial was held on August 7, 1997.
At trial, Morris testified that he had owned the Pleasant Street property for over twenty years and had never done any repairs or maintenance on the service lines. He also testified that he had not experienced any problems with the service lines prior to date on which Martin Concrete damaged the DPL lines. Steven Waker of Waker Plumbing was offered as an expert in the area of service line plumbing and testified on Morris' behalf. Waker testified that, when his company responded to Morris' property after the backhoe accident, Morris' service lines had been leaking and had needed to be replaced. Waker admitted on cross-examination, however, that the lines could have been leaking prior to the backhoe accident, that many leaks occur without any particular damage having been done to the lines, and that he "[didn't] know for sure one way or another" what had caused the leaks. Morris also presented evidence that, before his pipe was damaged, Martin Concrete had been aware that the DPL gas lines were not far below the surface because it had struck the same gas line up the street with a backhoe earlier in the day.
Other evidence offered at trial showed that Martin Concrete had not asked the Ohio Utility Protection Service ("OUPS") to help identify where the underground lines were located and that Martin Concrete had guessed at the location because it knew that the lines ran parallel to the curb. Evidence also demonstrated that, even if Martin Concrete had contacted OUPS, OUPS' records would not have indicated the shallowness of the gas lines. A DPL employee testified that the backhoe could have caused a leak on the DPL line even if it had barely touched the pipe. The evidence also showed that Morris' gas lines had been steel and that steel pipes do leak and need to be replaced at times due to age and corrosion. No specific evidence was offered about the condition of Morris' pipes prior to the backhoe accident.
The trial court found that Morris' service lines had been functioning properly until the backhoe incident because he had not experienced any problems with the lines prior to the incident. The court also found that Martin Concrete had been negligent in striking and dislodging the gas line in front of Morris' property because it had struck the line earlier in the day and because it could have located the line more precisely before digging. The trial court concluded that DPL had not been negligent, and it ordered Martin Concrete to pay $1,254.18 to Morris to cover the cost of his repairs.
Martin Concrete asserts one assignment of error on appeal.
 THE TRIAL COURT ERRED WHEN IT OVERRULED APPELLANT'S MOTION FOR AN INVOLUNTARY DISMISSAL.
Martin Concrete contends that Morris had failed to prove that the damage to his service pipes was caused by Martin Concrete's negligence because Morris' expert, Waker, admitted that the damage to Morris' lines could have been as reasonably attributed to an act for which Martin Concrete was not liable as to one for which it was liable. Martin Concrete points out that the establishment of proximate cause through expert testimony must be by probability, citing Shumaker v. Oliver B. Cannon Sons, Inc.
(1986), 28 Ohio St.3d 367.
Morris presented evidence that he had experienced no problems with his service lines before Martin Concrete hit the DPL line in front of his property with its backhoe and that he did experience problems immediately after the backhoe accident. Based on this evidence, the trial court could have reasonably concluded that the backhoe had caused the problems with Morris' gas lines even if no expert testimony had been offered in support of that conclusion.Wood v. Ellzoheary (1983), 11 Ohio App.3d 27, 29 (expert testimony unnecessary when causal relationship is a matter of common knowledge). Thus, any infirmities in the expert testimony were not necessarily fatal to Morris' claim. Because the trial court could have reasonably found that Martin Concrete had caused Morris' damages without any expert testimony, the trial court did not err in overruling Martin Concrete's motion for an involuntary dismissal.
The assignment of error is overruled.
The judgment of the trial court is affirmed.
YOUNG, P.J. and FAIN, J., concur.
Copies mailed to:
Laurence A. Lasky
David J. Balzano
Hon. Jim Owens/acting judge for
Hon. James F. Cannon