[Cite as *Miller v. Toledo Hosp.*, 2017-Ohio-2691.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Joni R. Miller, etc.                                    Court of Appeals No. L-16-1211

     Appellant                                       Trial Court No. CI0201501417

v.

The Toledo Hospital                             **DECISION AND JUDGMENT**

     Appellee                                        Decided:  May 5, 2017

* * * * *

Michael D. Bell, for appellant.

James E. Brazeau and Chad M. Thompson, for appellee.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} Plaintiff-appellant, Joni Miller, Administrator of the Estate of Robert McIlvain, Deceased, appeals the September 16, 2016 judgment of the Lucas County Court of Common Pleas which granted summary judgment in favor of defendant-appellee, The Toledo Hospital, in a medical negligence case.  Because we agree that no genuine issues of fact remain for trial, we affirm.

**{¶ 2}** The underlying facts of this case are essentially undisputed. Mr. McIlvain was admitted to The Toledo Hospital's cardiac step-down unit on August 20, 2013. On that date, McIlvain was 77 years old and suffering from various coronary issues. McIlvain was also noted to have memory issues. During the admission process, McIlvain was assessed as a "high risk" for falls under the Morse Fall Risk Scale assessment. Per hospital fall prevention policy, this required the use of various preventative measures including assigning a patient a room near the nurse's station, leaving the door open, instructing a patient to call for assistance, providing assistance with transfers and ambulation, and considering the use of a bed alarm.

**{¶ 3}** On August 23, 2013, around 9:30 p.m., McIlvain fell in his room. The only individual who witnessed the fall, Toledo Hospital Nurse Michelle Starkey, unfortunately passed away and was unable to provide a statement regarding the incident. At the time, Nurse Starkey charted the events as follows:

> pt found walking into bathroom per self. Was asked if he needed any help. pt proceeded towards toilet, lost balance and fell. Was asked if anything hurt, said only rt inner upper leg. Abrasion noted on rt fa. No other apparent injuries noted.

**{¶ 4}** Following his fall, it was determined that McIlvain suffered a right hip fracture which was surgically repaired. McIlvain was transferred to a rehabilitation facility and was later discharged home. McIlvain passed away on May 5, 2014, from congestive heart failure.

2.

{¶ 5} This action commenced on February 9, 2015, with appellant, decedent's daughter, asserting a claim for medical negligence and for wrongful death following McIlvain's August 23, 2013 fall and resulting injury while a patient at appellee Toledo Hospital. Appellant dismissed the wrongful death claim on March 3, 2016.

{¶ 6} On June 10, 2016, appellee filed a motion for summary judgment on the remaining negligence claim. The essence of its argument was that appellant was not able to establish a prima facie case of negligence because her arguments regarding the elements of breach and causation were speculative. Appellee specifically pointed to the March 2, 2016 deposition testimony of appellant's expert, Nurse Carol Alvin, and the materials she relied upon in rendering her opinion.

{¶ 7} In response, appellant, relying on the same materials, contended that neither Nurse Starkey nor any medical report indicated that Mr. McIlvain was being assisted at the time of his fall. Appellant argued that this, at minimum, created an issue of fact for trial. Appellant submitted the July 7, 2016 affidavit of Nurse Alvin.

{¶ 8} In the trial court's September 16, 2016 opinion and judgment entry granting summary judgment, it agreed that appellant's expert's opinion that appellee breached the standard of reasonable nursing care by failing to provide a bed alarm and/or by failing to assist McIlvain was not supported by the evidence or any reasonable inference derived therefrom. Specifically, the court concluded that as to the lack of a bed alarm, the testimony of Nurse Alvin failed to demonstrate that had the bed alarm been in place, McIlvain would not have made it to the bathroom unattended. Regarding the alleged lack

3.

of assistance, the court found that Nurse Alvin's opinion that Nurse Starkey failed to assist McIlvain and that this caused his fall was based upon an inference that she had the time to assist him prior to the fall and that she, in fact, failed to act consistently with that opportunity. This appeal followed.

{¶ 9} Appellant now raises the following assignment of error:

The trial court erred when it granted summary judgment in favor of Appellee The Toledo Hospital.

{¶ 10} At the outset we note that appellate review of a trial court's grant of summary judgment is de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Accordingly, we review the trial court's grant of summary judgment independently and without deference to the trial court's determination. *Brown v. Scioto Cty. Bd. of Commrs.*, 87 Ohio App.3d 704, 711, 622 N.E.2d 1153 (4th Dist.1993). Summary judgment will be granted only when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978); Civ.R. 56(C). The burden of showing that no genuine issue of material fact exists falls upon the party who moves for summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280, 294, 662 N.E.2d 264 (1996). However, once the movant supports his or her motion with appropriate evidentiary materials, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as

4.

otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E).

{¶ 11} In her sole assignment of error, appellant asserts that the trial court erred when it found that the evidence presented on the element of violation of the standard of care and the element of causation was speculative and, thus, failed to create an issue of fact for trial.

{¶ 12} Three elements must be proven in order to maintain a medical malpractice or professional negligence cause of action. First, a plaintiff must establish the applicable standard of care, usually through expert testimony. Second, a plaintiff must show a negligent failure on the part of the hospital or hospital employee to meet the standard of care. Finally, a direct causal connection must be demonstrated between the medically negligent act and the injury. *Starkey v. St. Rita's Med. Ctr.*, 117 Ohio App.3d 164, 169, 690 N.E.2d 57 (3d Dist.1997); *Bruni v. Tatsumi*, 46 Ohio St.2d 127, 346 N.E.2d 673 (1976).

{¶ 13} As set forth above, appellant's expert was Carol L. Alvin, RN, BSN. Nurse Alvin had been licensed in Ohio since 1979, and received her critical care nurse status in 1982. Alvin also received her cardiac medicine certification in 2010. Nurse Alvin is not active clinically and has been employed as a legal nurse consultant since 2011.

{¶ 14} Nurse Alvin testified in her deposition that in drafting her Statement of Merit, or report stating whether or not she believed that there was a breach in the standard of nursing care, she reviewed Mr. McIlvain's medical records, appellee's fall prevention

5.

protocol, and appellee's direct observation caregiver (sitter) policy. As to fall prevention, Nurse Alvin explained the Morse Fall Risk Scale which is used to evaluate the types of fall prevention measures to be implemented based on a patient's score; above 45 indicates a high risk of falling.

{¶ 15} During her deposition, Nurse Alvin provided two opinions as to breaches of the nursing standard of care. First, Alvin stated that based upon McIlvain's fall risk score of 85, a reasonable standard of nursing care would require the use of a bed alarm. Second, McIlvain should have been physically assisted by the nurse while ambulating to the restroom.

{¶ 16} Nurse Alvin stated that her definition of a fall, an uncontrolled drop to the floor, would have been prevented had McIlvain been physically assisted. In other words, had personnel not been able to keep him upright, he would have been "let down easily" in a controlled manner. Alvin admitted that it would be possible for a nurse to assist a patient who still hits the floor in an uncontrolled manner and not have breached the nursing standard of care. Alvin also admitted that a "reasonable nurse" could have a different definition of the word "fall."

{¶ 17} Alvin further testified that this lack of assistance caused McIlvain's fall. When questioned about her belief that he was unassisted, Nurse Alvin states that the chart notes indicate that the nurse only asked McIlvain if he needed assistance, it did not state that she, in fact, assisted him. Alvin stated her belief that had the nurse assisted McIlvain, she would have written that in the chart.

6.

{¶ 18} Regarding the use of a bed alarm, Nurse Alvin stated that it is used to alert a nurse that a patient has gotten out of bed. Alvin acknowledged that it does not keep a patient in bed but that if hospital personnel hears the alarm and immediately goes to assist the patient they have satisfied the standard of care. Appellee's fall risk policy did not require the use of a bed alarm; its use was discretionary.

{¶ 19} Appellant first argues that the trial court erred when it found that she failed to raise an issue of fact as to whether the lack of a bed alarm caused Mr. McIlvain's fall. Appellant asserts that had the bed alarm been in place, McIlvain's fall would have likely been prevented. In support, appellant cites to Nurse Alvin's July 7, 2016 affidavit which states that "had a bed alarm been in place and activated, nursing would have been alerted to Mr. McIlvain's ambulating long before he reached the bathroom, and—had they acted appropriately—the fall would have been prevented."

{¶ 20} However, this affidavit is contradicted by Alvin's prior deposition testimony which provides:

> Q: Is it your opinion that supposed failure to use a bed alarm more likely than not caused the decedent's fall in this case?
>
> A: I don't think I can speak to causation, but I can say that in this particular case the patient not being assisted when he was up led to his fall.
>
> Q: Is it your testimony that the supposed fact that the patient was not being assisted, regardless of whether there was a bed alarm, caused his fall?

7.

A: Yes. Wait a minute. Caused? Allowed it.

Q: So I guess what you're saying is but for a lack of assistance, he would not have fallen?

A: Correct.

Q: Regardless of whether or not a bed alarm was necessary?

A: That is correct in this instance.

{¶ 21} Appellee correctly states that a subsequent, contradictory and unexplained affidavit of the same nonparty expert may generally not be used to create an issue of fact, *See Pettiford v. Aggarwal*, 126 Ohio St.3d 413, 2010-Ohio-3237, 934 N.E.2d 913, syllabus. Accordingly, we conclude that no issue of fact remained regarding the absence of a bed alarm and the proximate cause of McIlvain's fall.

{¶ 22} Further, even assuming that a bed alarm was in place, Nurse Alvin acknowledged that there was no requirement that a nurse either be in the patient's room or near the patient's room. Thus, there is no indication that Starkey or any hospital personnel would have been alerted and arrived in McIlvain's room any sooner than the events at issue.

{¶ 23} Appellant next asserts that, at minimum, an issue of fact was raised as to whether Nurse Starkey's failure to assist Mr. McIlvain proximately caused his fall. Conversely, appellee argues that any inference that Nurse Starkey breached the standard of care by failing to assist is pure speculation and does not create an inference of negligence.

8.

**{¶ 24}** In its motion for summary judgment, appellee relied on a case involving a fall at a nursing home. *McFarren v. Emeritus at Canton*, 2016-Ohio-484, 59 N.E.3d 652 (5th Dist.). In *McFarren*, a 91-year-old resident was found on the floor of her room with a fractured left hip; she died approximately one week later. The decedent's grandson submitted an affidavit stating that his grandmother told him that she had been calling for help to move her from her wheelchair to the bed; when no one came she attempted the move and fell. *Id.* at ¶ 11. Regarding the alleged negligence based on a breach of the standard of care/fall prevention, the court determined that it was speculation as to whether the fall could have been prevented had more precautions been in place. *Id.* at ¶ 82. The court further noted:

> [E]ven assuming that Mrs. Rinker did call for assistance prior to her fall, there is no evidence in the record, hearsay or otherwise, to establish how long or how many times Mrs. Rinker called out to determine if any alleged delay in responding constituted proximate cause for purposes of establishing negligence. Without evidence as to how long she called out prior to deciding to attempt the transfer on her own, there is not sufficient evidence to meet the proximate cause standard. *Id.* at ¶ 85.

**{¶ 25}** The parties dispute the applicability of *McFarren*; appellant claims it is distinguishable because it is known how McIlvain fell as he was witnessed losing his balance. Appellee counters that this fact is not the ultimate question; the issue is whether the nurse violated the standard of care by failing to assist Mr. McIlvain.

9.

**{¶ 26}** As quoted by appellee, addressing causation the trial court, tucked in a footnote, keenly observed:

Nurse Starkey's chart note offers a breadth of speculative permutations relative to the circumstances surrounding Mr. McIlvain's fall. Was Nurse Starkey close to Mr. McIlvain (or even present in his room) when she spotted him out of bed, or was she farther away, perhaps in the hallway, when she saw him? How quickly did Mr. McIlvain fall after Starkey first spotted him: was it instantaneous, or did Mr. McIlvain only fall after an appreciable moment or more? Was Starkey standing still or moving toward Mr. McIlvain when she asked if he needed assistance? Was there some "logistical" impediment delaying Starkey's ability to get to McIlvain (Starkey's chart note stated that he was walking *into* the bathroom and that he proceeded *to* the toilet, as opposed to a more general observation that he was walking *to or towards* the bathroom)? Did Starkey, in fact, have a failed attempt to assist Mr. McIlvain, causing him to "land on bottom?" Did Starkey simply stand (in some unknown location) and watch these events unfold? Did she dart in Mr. McIlvain's direction but fail to reach him in time? What else might have happened that Starkey did not record in her note? There are no established facts to support reasonable answers to any of these, or similar questions.

**{¶ 27}** The trial court's observations demonstrate the fatal flaw in appellant's case. The fact that these questions are not capable of an answer leads to the inescapable conclusion that no issues of fact remain for trial. Nurse Alvin's opinions on causation are too speculative to set forth a prima facie case of medical negligence. Appellant's assignment of error is not well-taken.

**{¶ 28}** On consideration whereof, we find that substantial justice was done the party complaining and the judgment of the Lucas County Court of Common Pleas is affirmed. Pursuant to App.R. 24, appellant is ordered to pay the costs of this appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.          _____
                                                                   JUDGE

Arlene Singer, J.

Thomas J. Osowik, J.           _____
CONCUR.                                                                 JUDGE

                                                                  _____
                                                                 JUDGE