JOURNAL ENTRY AND OPINION
{¶ 1} The Estate of Paul Zhun ("the estate") appeals the trial court's granting of the motion in limine filed by appellee William A. Benish, M.D. to exclude the estate's expert witness, and the court's subsequent grant of summary judgment in favor of Dr. Benish. The estate assigns five errors for our review; Dr. Benish assigns one cross-assignment of error.[1]
 {¶ 2} Having reviewed the record and pertinent law, we affirm the trial court's decision. The apposite facts follow.
 {¶ 3} Dr. Benish began treating Mr. Zhun in August of 1998 for acute hepatitis and alcoholism and continued to do so until Mr. Zhun's death on April 13, 2001, due to liver failure. Dr. Benish had continually recommended Mr. Zhun attend Alcoholics *Page 2 
Anonymous, and informed Mr. Zhun regarding the health risks associated with continued drinking.
 {¶ 4} Mr. Zhun's estate filed a complaint for malpractice and wrongful death against Dr. Benish, alleging he was negligent in his care and treatment of Mr. Zhun. The estate retained Richard Blondell, M.D., as an expert witness to testify regarding the standard of medical care that Zhun received from Dr. Benish.
 {¶ 5} Dr. Blondell testified regarding his competency to testify by outlining the time he spent seeing patients, performing clinical research, and teaching medical students. Dr. Blondell also testified that he could not state with any certainty whether an intervention would have prevented Mr. Zhun's death, but in his view, Dr. Benish's failure to engage in intervention as a treatment option was negligent.
 {¶ 6} Dr. Benish filed a motion for summary judgment based on Dr. Blondell's inability to offer an opinion as to the probability that medical malpractice caused Mr. Zhun's death. On the morning of trial, the trial court had not ruled on Dr. Benish's motion for summary judgment. Dr. Benish, therefore, requested the trial court preclude the testimony of Dr. Blondell based on the fact Dr. Blondell was not competent to testify as an expert witness because he had not spent at least 50% of his time caring for patients. After hearing the arguments of counsel and further testimony by Dr. Blondell, the trial court granted Dr. Benish's motion in limine. Dr. Benish then moved to supplement his motion for summary judgment to request *Page 3 
judgment based on the estate's failure to obtain an expert opinion. The trial court granted the motion for summary judgment.
 Motion for Summary Judgment {¶ 7} We disagree with the trial court's exclusion of Dr. Blondell's testimony as an expert witness and then granting summary judgment for failure to produce an expert. Given the circumstances, perhaps a continuance should have been granted to allow the retention of another witness. Regardless, we conclude summary judgment was properly entered based on the argument set forth by Dr. Benish in his cross-assigned error. When a trial court reaches a correct result, but on an erroneous basis, an appellate court must affirm the judgment if it is legally correct on other grounds.[2]
 {¶ 8} In his cross-assigned error, Dr. Benish argues summary judgment was properly granted because Dr. Blondell was unable to testify within medical certainty that Dr. Benish's failure to aggressively pursue an intervention program with Mr. Zhun would have prevented Mr. Zhun's liver failure and subsequent death.
 {¶ 9} We review an appeal from summary judgment under a de novo standard of review.[3] Accordingly, we afford no deference to the trial court's decision *Page 4 
and independently review the record to determine whether summary judgment is appropriate.[4] Under Civ.R. 56, summary judgment is appropriate when: (1) no genuine issue as to any material fact exists, (2) the party moving for summary judgment is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion which is adverse to the nonmoving party.[5]
 {¶ 10} The moving party carries an initial burden of setting forth specific facts which demonstrate his or her entitlement to summary judgment.[6] If the movant fails to meet this burden, summary judgment is not appropriate; if the movant does meet this burden, summary judgment will be appropriate only if the non-movant fails to establish the existence of a genuine issue of material fact.[7]
 {¶ 11} A review of the record indicates the estate's expert failed to testify within a reasonable degree of medical certainty that medical malpractice was the cause of Mr. Zhun's death. In order to prevail on a claim of medical malpractice, one must prove by a preponderance of the evidence that his or her injury was directly and proximately caused by an act or omission that did not meet the standard of care of a *Page 5 
doctor of ordinary skill, care and diligence under like circumstances.[8] Moreover, one is generally required to "prove causation through medical expert testimony in terms of probability to establish that the injury was, more likely than not, caused by the defendant's negligence."[9]
 {¶ 12} A review of Dr. Blondell's deposition testimony indicates he could not testify to a probability that Dr. Benish's failure to intervene proximately caused Mr. Zhun's death. Dr. Blondell testified as follows:
 "I have seen interventions that have been done in emergency rooms that have resulted in patients stopping drinking, starting recovery, and saving their life. I have seen intervention in the emergency room where the outcome has not been good. So, if an intervention had been done at that moment in time can I say with any certainty what the outcome would have been? No, because I'm not clairvoyant * * *."[10]
 {¶ 13} Additionally, Dr. Blondell could not say to a probability that Mr. Zhun would not have died had Dr. Benish actively sought intervening measures.
 {¶ 14} He stated as follows:
 "Q: And I appreciate your point, I just want to make sure we're communicating. I think you cleared it up. I'm talking not just at the ER, from the time Dr. Benish undertook his care in `98 until the time of his death, as we sit here right now we can't say that the intervention you would have liked to see, one of those options, whether one of those options, you can't say more likely than not whether or not it would have resulted in Mr. Zhun surviving? *Page 6 
 "A: What you're asking is are there two to one odds, 50/50 chance here.
 "Q: I'm just saying we don't know more likely than not whether it would have worked, correct?
 "A: If you hold one die in your hand numbered one through six, and you roll that what's the chance that a number six would come up? If you had a die in your hand and rolled it, could I, in Buffalo, sit here and say whether a six was going to come up or not? I don't know, but you have to roll the dice. It either does or it doesn't come up. So, if they had taken the intervention, rolled the dice, maybe his number would have come up, maybe it wouldn't. Could I sit here in the year 2006 and say what would have happened if they had rolled the dice at that moment? No, I can't say that. You're right, but they didn't try."[11]
 {¶ 15} In his expert report, Dr. Blondell also opined:
 "The alcohol rehabilitation treatment would have possibly led to an improvement in the quality of Mr. Zhun's life and would have had the potential to prevent the progression of Mr. Zhun's alcohol use."
 {¶ 16} Thus, Dr. Blondell's deposition and expert report indicate that had Dr. Benish performed the intervention, Dr. Blondell could not conclude that Mr. Zhun would not have died from liver failure anyway. When establishing proximate cause through the use of expert testimony, the expert's opinion must be stated at a level of probability, not mere possibility.[12] An expert opinion is competent only if it is held to a reasonable degree of scientific certainty.[13] In this context, reasonable certainty *Page 7 
means probability.[14] Thus, an expert must state his or her opinion in terms of probability, meaning that he or she must express that there is a greater than fifty percent likelihood that a certain act or failure to act caused a given result.[15]
 {¶ 17} In Dr. Blondell's affidavit attached to the estate's motion in opposition to summary judgment, he contends his above answers were given subsequent to a question involving when one intervention method was pursued versus a combination of methods. However, a review of the record clearly indicates the question concerned whether the outcome would have been different if any of the "intervention methods" were used.
 {¶ 18} Additionally, Dr. Blondell was focused on the fact that intervention was not attempted at all. He was not focused on the result of the failure to attempt intervention. His opinion was the fact that Dr. Benish did not aggressively pursue intervention constituted medical malpractice. He specifically stated, "the outcome isn't important, what's important is did the doctors do it."
 {¶ 19} If an affidavit by a nonmoving party appears to be inconsistent with a deposition, the court must look to any explanation for the inconsistency. A nonmoving party's contradictory affidavit must sufficiently explain the contradiction *Page 8 
before a genuine issue of material fact is created.[16] In the instant case, Dr. Blondell's explanation in his deposition does not sufficiently explain the contradiction. Although he claims in his affidavit that his answers were in response to questions concerning the use of one intervention method versus a combination of methods, the questions clearly concerned whether any of the interventions listed by Dr. Blondell would have definitely prevented Mr. Zhun's death. These questions were based on Dr. Blondell's explanation regarding the various intervention methods that could have been attempted. Moreover, as we stated, Dr. Blondell's focus was not on the result of the failure to intervene, but the fact that in his opinion, Dr. Benish did not attempt to aggressively intervene at all.
 {¶ 20} Accordingly, Dr. Benish's cross-assigned error is sustained. As a result, the estate's five assigned errors regarding Dr. Blondell's competency as an expert witness are moot.
Judgment affirmed.
It is ordered that appellee recover of appellant his costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. *Page 9 
PATRICIA ANN BLACKMON, JUDGE
KENNETH A. ROCCO, J., CONCURS; COLLEEN CONWAY COONEY, P.J., CONCURS IN JUDGMENT ONLY *Page 10 
 APPENDIX
Assignments of Error "I. The trial court erred in treating its ruling on defendant's motion in limine with respect to the testimony of plaintiff's physician expert witness, not as preliminary and subject to reconsideration at that time such testimony was to be offered at trial in accordance with Riverside Methodist Hosp. Assn. v. Guthrie (1982), 3 Ohio App.3d 308, syllabus 2, and the syllabus of State v. Spahr (1976), 47 Ohio App.2d 221, but rather as final."
 "II. The trial court erred in granting defendant's motion to convert its motion in limine with respect to the testimony of plaintiff's physician expert into a motion for summary judgment without providing plaintiff, as the nonmoving party, a reasonable opportunity to provide materials contra in accordance with Civ.R. 56."
 "III. The trial court erred in failing to count clinical research by a physician expert on the subject at issue in the suit as adjunctive to active clinical practice for purposes of Evid.R. 601(D), in accordance with McCrory v. State (1981), 67 Ohio St.2d 99."
 "IV. The trial court erred in failing to count direct patient care in the course of clinical research by a physician expert as adjunctive to active clinical practice, inasmuch as there is no authority or precedent holding that only patient care rendered as the primary care physician, as opposed to care rendered as part of a clinical team, counts as active clinical practice."
 "V. The trial court erred in failing to recognize and count clinical practice by a physician expert rendered prior to the period in which he testifies as an expert in accordance with Alridge v. Gardner, 2005-Ohio-829." *Page 11 
Cross-assignment of Error: "I. Even if the court determines that Dr. Blondell is competent to testify as an expert witness, because Dr. Blondell cannot testify that any breach in the standard of care proximately caused injury to appellant, the trial court's ruling on appellee's motion for summary judgment should not be reversed."
[1] See Appendix.
[2] Myers v. Garson (1993), 66 Ohio St.3d 610, 614; Gunsorek v.Pingue (1999), 135 Ohio App.3d 695, 701; State v Payton (1997),124 Ohio App.3d 552, 557; McCormick v. Haley (1973), 37 Ohio App.2d 73, 77.
[3] Baiko v. Mays (2000), 140 Ohio App.3d 1, citing Smiddy v. TheWedding Party, Inc. (1987), 30 Ohio St.3d 35; Northeast Ohio Apt. Assn.v. Cuyahoga Cty. Bd. of Commrs. (1997), 121 Ohio App.3d 188.
[4] Id. at 192, citing Brown v. Scioto Bd. of Commrs. (1993),87 Ohio App.3d 704.
[5] Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327.
[6] Dresher v. Burt, 75 Ohio St.3d 280, 292-293, 1996-Ohio-107.
[7] Id. at 293.
[8] Bruni v. Tatsumi (1976), 46 Ohio St.2d 127, 131.
[9] Roberts v. Ohio Permanente Medical Group, Inc. (1996),76 Ohio St.3d 483, 485.
[10] Blondell Depo. at 72-73.
[11] Blondell Depo. at 73-74.
[12] Shumaker v. Oliver B. Cannon Sons, Inc. (1986),28 Ohio St.3d 367; Stinson v. England (1994), 69 Ohio St.3d 451, paragraph one of syllabus.
[13] State v. Benner (1988), 40 Ohio St.3d 301, 313.
[14] Id.
[15] Stinson v. England (1994), 69 Ohio St.3d 451, 455.
[16] Byrd v. Smith, 110 Ohio St.3d 24, 2006-Ohio-3455, paragraph 3 of the syllabus. *Page 1