JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} In this accelerated appeal, appellant Slavka Blazef, executrix of the Estate of Dimitri Blazef, appeals the trial court's dismissal of her medical malpractice complaint. Blazef assigns the following error for our review:
 "I. The trial court denied the plaintiff her due process right to trial by jury when it sua sponte dismissed the complaint prior to trial."
 {¶ 2} Having reviewed the record and pertinent law, we affirm the trial court's decision. The apposite facts follow.
 {¶ 3} On February 7, 2006, Blazef, as executrix of her husband's estate, filed a negligence, medical malpractice and wrongful death action against Cleveland Clinic Foundation and William Carey, M.D. ("The Clinic"). In the suit, Blazef alleged her husband was a patient of the Clinic from approximately 1999 through 2002. The suit specifically alleged that the Clinic failed to prescribe Lamivudine to treat her husband, who was suffering from Hepatitis-B. Blazef further alleged that the Clinic's failure to prescribe Lamivudine caused pain, suffering and the ultimate death of her husband.
 {¶ 4} Blazef retained Robert Knodell, M.D., as an expert witness to testify regarding the standard of medical care that her husband received from the Clinic. After discovery and trial depositions were conducted, the Clinic filed a motion in limine to preclude Dr. Knodell from offering standard of care and causation opinions. In the motion in limine, the Clinic asserted that Dr. Knodell's deposition testimony failed to give an opinion that the Clinic deviated from acceptable standard of care in its treatment of Blazef's husband. The Clinic *Page 4 
asserted that Dr. Knodell's testimony only established that Lamivudine was used to treat Hepatitis-B patients in 2000, 2001, and 2002, that he used the medication for that purpose, and that medical literature existed during that time to support its use.
 {¶ 5} On December 7, 2007, after a hearing, the trial court granted the Clinic's motion in limine to preclude Dr. Knodell from offering any expert opinions at the time of trial. On December 27, 2007, Blazef filed a motion for relief from judgment, which the trial court denied.
 Motion to Dismiss {¶ 6} In the sole assigned error, Blazef argues the trial court erred in sua sponte dismissing the complaint. We disagree.
 {¶ 7} We review a trial court's decision to dismiss a case pursuant to Civ. R. 41(B)(1) for an abuse of discretion.[1] The phrase "abuse of discretion" connotes more than an error of judgment; rather, it implies that the trial court's attitude was arbitrary, unreasonable, or unconscionable.[2] When applying the abuse of discretion standard, this Court may not substitute its judgment for that of the trial court.[3] *Page 5 
 {¶ 8} A trial court may involuntarily dismiss a case under Civ. R. 41(B)(1) where the plaintiff fails to prosecute, or comply with the rules or any court order. The trial court may sua sponte raise this issue, however, it must give notice to the plaintiff's counsel.[4]
Dismissal under Civ. R. 41(B)(1) requires notice of the court's intention to dismiss so that the party adversely affected has an opportunity to explain why dismissal is inappropriate.[5]
 {¶ 9} A trial court may also dismiss a complaint, sua sponte, if the complaint is either frivolous or the pleading party clearly could not prevail on the facts alleged in the complaint.[6] Similarly, a court may dismiss a complaint on its own motion pursuant to Civ. R. 12(B)(6), failure to state a claim upon which relief can be granted, only after the parties are given notice of the court's intention to dismiss and an opportunity to respond.[7]
 {¶ 10} In the instant case, the trial court's journal entry stated in pertinent part as follows: *Page 6 
 "Plaintiff's Motion for Relief of Judgment, filed 12/27/07, is denied. The Court dismissed the case short of trial following a ruling on a Motion in Limine. The Motion at issue addressed the sufficiency of Plaintiff's expert's testimony. Specifically, whether the expert testified to the requisite degree of medical certainty. The Court withheld a ruling on the Motion in Limine, filed 12/3/07, at the Plaintiff's request pending receipt of the expert's trial transcript. Following a review of the transcripts, both of the discovery deposition and the trial deposition, this Court ruled that the Defendant's Motion in Limine was well taken and that the Plaintiff's expert failed to expressly testify to the requisite degree of medical certainty. The Court spoke with counsel for both Plaintiff and the Defendant and offered Plaintiff an opportunity to bring the expert in live on the date of trial to attempt to correct the testimony. The expert was unavailable. Having granted two earlier continuances of the trial date, the Court was not inclined to continue the case again because to do so would result in unnecessary delay. In the interest of judicial economy, this Court dismissed the case sua sponte because Plaintiff could not sustain the claim without an expert. Plaintiff's contention that the Court's conduct was improper because it failed to provide the Plaintiff with an opportunity to respond is not well taken. This case was filed in February 2006. The Plaintiff had ample time to depose its expert, but waited until the eve of trial to do so. The delay in taking the deposition resulted in an unusual situation wherein the Defendant could not file a Motion in Limine on an issue that was ultimately dispositive until the last possible minute."[8]
 {¶ 11} A review of the record indicates the estate's expert failed to testify within a reasonable degree of medical certainty that medical malpractice was the cause of Blazef's husband's death. In order to prevail on a claim of medical malpractice, one must prove by a preponderance of the evidence that his or her injury was directly and proximately caused by an act or omission that did not meet the standard of care of a doctor of ordinary skill, care and diligence under like circumstances.[9] Moreover, one is generally required to "prove *Page 7 
causation through medical expert testimony in terms of probability to establish that the injury was, more likely than not, caused by the defendant's negligence."[10]
 {¶ 12} A review of Dr. Knodell's deposition testimony indicates that although Lamivudine was used to treat Hepatitis-B patients in 2000, 2001, and 2002, that he used Lamivudine for that purpose, and that medical literature existed during that time to support its use, he could not testify to a probability that the Clinic's failure to prescribe Lamivudine proximately caused Mr. Blazef's death. Dr. Knodell testified as follows:
 "Q. Doctor, let's turn for the moment to — this is where I'm going to finish I think — this testimony that you gave regarding causation of any injuries to Mr. Blazef as a result of what you feel to be a delay or failure to give Lamivudine to him. You cannot give an opinion, Doctor, from the evidence in this case to a reasonable medical probability as to what Mr. Blazef's likely course would have been had he been started on Lamivudine earlier, correct?
 A. I certainly have no divine provenance and we have established that some patients respond and some don't. I could not predict whether he would be a responder or not.
 Q. And — and similarly, Doctor, you can't render an opinion to a reasonable medical probability as to how much longer Mr. Blazef would have lived had Lamivudine been started at any time earlier in his medical care, correct?
 A. I cannot."[11] *Page 8 
 {¶ 13} Additionally, Dr. Knodell could not say to a probability that Mr. Blazef would not have died had the Clinic prescribed Lamivudine. On re-direct examination, Dr. Knodell testified as follows:
 "Q. Well, let me ask it again. Do you have a — an opinion to a reasonable degree of medical certainty whether the failure to prescribe Lamivudine in the years 2000, 2001, and 2002 to Mr. Blazef caused him to lose less than an even chance at survival?
 A. All I can — again, I have no divine provenance. I can quote the — the percentages of people who responded to Lamivudine who were in his clinical severity of liver disease group. They range from 62 percent in the Villeneuve's group to quote in Dr. Lok's article in Gastroenterology of 82 or 86 percent according to Dr. Perillo. Other than that, I can't make a comment on his survival."[12]
 {¶ 14} Thus, Dr. Knodell's deposition and expert report indicate that had the Clinic administered Lamivudine, Dr. Knodell could not conclude that Mr. Blazef would not have died from liver failure anyway. When establishing proximate cause through the use of expert testimony, the expert's opinion must be stated at a level of probability, not mere possibility.[13] An expert opinion is competent only if it is held to a reasonable degree of scientific certainty.[14] An expert opinion is competent only if it is held to a reasonable degree *Page 9 
of scientific certainty. In this context, reasonable certainty means probability.[15] Thus, an expert must state his or her opinion in terms of probability, meaning that he or she must express that there is a greater than fifty percent likelihood that a certain act or failure to act caused a given result.[16]
 {¶ 15} Here, the record indicates that Dr. Knodell failed to opine that the Clinic deviated from the applicable standard of care in its treatment of Mr. Blazef. On the contrary, the Clinic's expert, Dr. Gregory Everson testified in his deposition that the standard of care in 2000 and 2001 did not require the administration of Lamivudine, and that the Clinic complied with the standard of care. Dr. Everson testified in pertinent part as follows:
 Q. Was the failure to prescribe Lamivudine to Dr. [sic] Blazef in June 2000 within the standard of care, Doctor?
 A. Yes.
 "* * *
 Q. So in — June of 2000 when Dr. Carey first saw Mr. Blazef * * * was all of that within the appropriate standard of care, Doctor, at that time?
 A. Yes.
 "* * *
 Q. * * * Doctor, do you have an opinion whether Lamivudine was required in November of 2001 in the treatment of Mr. Blazef to meet the standard of care? *Page 10 
 A. It was not required. It was not the standard of care.
 "* * *
 Q. * * * Was the failure to start Lamivudine an indication of some deviation from the standard of care during any of that time?
 A. For the same reasons I've mentioned, I don't believe so. When he was hospitalized in March 2002, he was hospitalized — this was at Ohio State. He was hospitalized for what's called pulmonary emboli, which are clots in the lungs. That's not related to his liver disease. That's not related to cirrhosis. That's not related to Hepatitis-B. That's related to his general cardiac condition."[17]
 {¶ 16} We conclude, on the record before us, that Blazef failed to produce the requisite expert testimony to establish that the Clinic deviated from the standard of care in its treatment of Mr. Blazef. As such, Blazef cannot prevail on a claim of medical malpractice. The trial court properly determined that Blazef could not prove by a preponderance of the evidence that Mr. Blazef's injury and subsequent death, was directly and proximately caused by the Clinic's failure to prescribe Lamivudine. Consequently, the trial court's sua sponte dismissal of the complaint did not constitute an abuse of discretion. Accordingly, we overrule the sole assigned error.
Judgment affirmed.
It is ordered that appellees recover of appellants their costs herein taxed.
 The court finds there were reasonable grounds for this appeal. *Page 11 
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANTHONY O. CALABRESE, JR., P.J., and KENNETH A. ROCCO, J., CONCUR
[1] Yencho v. Yencho, 9th Dist. C.A. No. 07CA0043-M,2008-Ohio-340, citing Quonset Hut v. Ford Motor Company (1997),80 Ohio St.3d 46, 46-47.
[2] Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
[3] Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621,1993-Ohio-122.
[4] Sunkin v. Collision Pro, Inc., 9th Dist. No. 23730,2007-Ohio-6046, citing Logsdon v. Nichols, 72 Ohio St.3d 124, 128,1995-Ohio-225.
[5] Tymachko v. Ohio Dept. of Mental Health, 10th Dist. No. 04AP-1285, 2005-Ohio-3454.
[6] Barnes v. City of Beachwood, Cuyahoga App. No. 87100,2006-Ohio-3948, citing State ex rel. Kreps v. Christiansen,88 Ohio St.3d 313, 316, 2000-Ohio-335.
[7] Columbus Metro. Hous. Auth. v. Flowers, 10th Dist. No. 05AP-87, No. 05AP-372, 2005-Ohio-6615, citing State ex rel. Fogle v.Steiner (1995), 74 Ohio St.3d 158, 161, 1995-Ohio-278.
[8] Journal Entry dated December 31, 2007.
[9] Bruni v. Tatsumi (1976), 46 Ohio St.2d 127, 131.
[10] Roberts v. Ohio Permanente Medical Group, Inc.,76 Ohio St.3d 483, 485, 1996-Ohio-375.
[11] Dr. Knodell's Depo. at 97-98.
[12] Dr. Knodell's Depo. at 109.
[13] Zhun v. Benish, Cuyahoga App. No. 89408, 2008-Ohio-572, citingShumaker v. Oliver B. Cannon Sons, Inc. (1986), 28 Ohio St.3d 367;Stinson v. England, 69 Ohio St.3d 451, 1994-Ohio-35, paragraph one of syllabus.
[14] State v. Benner (1988), 40 Ohio St.3d 301, 313.
[15] Id.
[16] Stinson, supra at 455.
[17] Dr. Everson's Depo. at 23, 30, and 34-35. *Page 1